Donna L. McLELLAN

v.

Dean P. MORRISON, Jr.

Supreme Judicial Court of Maine.

Argued June 15, 1981.
Decided Aug. 19, 1981.

Richard W. Elliott (orally), Boothbay Harbor, for plaintiff.

Hunt, Thompson & Bowie, Daniel R. Mawhinney (orally), Roy E. Thompson, Portland, Thomas A. Berry, Boothbay Harbor, for defendant.

Before McKUSICK, C.J., and GODFREY, ROBERTS and CARTER, JJ.

McKUSICK, Chief Justice.

In this automobile negligence action, tried to a jury in Lincoln County, plaintiff Donna McLellan appeals from a Superior Court judgment in favor of defendant Dean P. Morrison, Jr. Plaintiff's two claims of error on appeal relate to the admission of a physician's opinion on causation and to the jury's special verdict that, even though defendant's negligence was the proximate cause of the automobile collision, plaintiff suffered no damages therefrom. We deny her appeal.

On Friday evening, June 16, 1978, plaintiff was a passenger in a car driven by her brother, Durwood Lewis, on Route 27 in Boothbay. The accident giving rise to this litigation occurred when a vehicle driven by defendant and approaching the Lewis car from the opposite direction crossed the highway's center line and struck the Lewis car. At the trial of her suit for damages on account of alleged personal injuries, plaintiff testified that she was aware immediately after the accident of having sustained a sizable lump on the left side of her head, a bruised right knee, and a cut on the left elbow. She did not, however, go to a hospital because she believed the injuries were not serious. Over the weekend she suffered severe headaches that caused her to sleep most of the time. After trying unsuccessfully to work Monday morning, she visited her personal physician, Dr. Carl R. Griffin, that afternoon. On examining her, he found tiny abrasions on her left elbow and right knee and a subsiding lump on the side of her head. He prescribed medication for the head injury. Plaintiff testified that her headaches persisted for a couple of weeks and then went away.

Following the accident, plaintiff testified, she also experienced a minor ache in her left elbow. In about November 1978 the ache became worse and plaintiff began also to feel a tingling sensation in her left hand. In January 1979, at plaintiff's regular medical checkup, Dr. Griffin determined that her symptoms were caused by her ulnar nerve's lying too loosely in the ulnar groove of the elbow. To correct that condition, Dr. Griffin operated on plaintiff's left arm in February 1979, moving the ulnar nerve out of the ulnar cavity and repositioning it next to the skin. Following that procedure, plaintiff continued to experience numbness in the fourth and fifth fingers of her left hand; she could use her arm but not as extensively as previously. At trial, plaintiff could recall no injury to her elbow other than the one that occurred at the time of the automobile accident.

The jury returned a special verdict concluding that defendant's negligence caused the collision, but that plaintiff was entitled to recover no damages. Plaintiff then moved in the alternative for a judgment notwithstanding the verdict or for a new trial, asserting that the evidence was insufficient to warrant the verdict. The presiding justice denied both motions [1] and plaintiff now appeals.

## I.

At trial, defendant offered the testimony of plaintiff's personal physician, Dr. Griffin. The doctor testified that in his opinion there was no causal connection between the June 1978 accident and the injury to plaintiff's ulnar nerve. Plaintiff asserts that Dr. Griffin had based his opinion in part on a telephone conversation he had with a Portland neurosurgeon after the surgery and that, since the contents of the conversation would not themselves have been admissible, the doctor's opinion should not have been admitted either. We disagree.

[1] The presiding justice correctly denied the motion for judgment n. o. v. because plaintiff had made no motion for a directed verdict at the close of the evidence. M.R.Civ.P. 50(b).

M.R.Evid. 703, entitled "Basis of Opinion Testimony by Experts," reads in full as follows:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Where an expert has relied on inadmissible material in forming his opinion and that material would not be used by experts other than for the purpose of preparing to testify at trial, his opinion testimony will not be admitted. *See State v. Rolls*, Me., 389 A.2d 824, 829–30 (1978), *citing and quoting* Field & Murray, *Maine Evidence* § 703.2 at 175 (1976). However, the purpose of Rule 703 is not to exclude testimony, but rather "to bring judicial practice into line with the practice of experts themselves when not in court." Advisers' Note to M.R.Evid. 703; *State v. Rolls, supra* at 829. Thus, if the proponent of expert opinion testimony based on underlying matter that is itself inadmissible is able to show that experts in the field ordinarily rely on similar facts or data in forming their conclusions, the opinion testimony will be admitted. *Id.* The admissibility of such opinion testimony is to be determined by the presiding justice, whose ruling will not be overturned unless clearly erroneous. *See State v. Bridges*, Me., 413 A.2d 937, 942 (1980).

On this record, the presiding justice's ruling admitting Dr. Griffin's testimony was not clearly erroneous. Prior to going on the stand and testifying to his opinion as to the lack of causal relationship between the June 1978 accident and plaintiff's ulnar nerve condition, Dr. Griffin had consulted by telephone with a Portland neurosurgeon concerning the matter; exactly what the Portland physician told Dr. Griffin was, however, never revealed. In addition, Dr. Griffin had himself had training and experience qualifying him to give that opinion as to causation. He had performed the same ulnar nerve surgery on others and had twice undergone the procedure as a patient himself. He testified that during the surgery on plaintiff he had observed no scar tissue in her elbow and that he would normally have expected to see scar tissue had the ulnar nerve been injured at the time of the automobile accident some eight months earlier.

Based on his own training, experience, and observations, Dr. Griffin was fully qualified to give his expert medical opinion that plaintiff's ulnar nerve condition was not related to the June 1978 automobile accident. His telephone consultation with a Portland neurosurgeon was but one of the deliberative steps he took in forming his opinion as to the cause of plaintiff's particular elbow problem. In conferring with another medical expert, Dr. Griffin was merely following a procedure similar to consulting a medical textbook to obtain a confirmation of his own tentative conclusion. His expert medical opinion was no less his own by reason of having been backed up by his consultation with another expert. There was no error in the Superior Court's admission of that opinion testimony.

II.

Plaintiff also asserts that she should be given a new trial because the jury's award of no damages was contrary to the weight of the evidence. As this court has previously held, "[a]ssessment of damages is the sole province of the jury, and its award will stand in the absence of a demonstration that it acted improperly." *Binette v. Deane*, Me., 391 A.2d 811, 815 (1978), *citing and quoting Hartt v. Wiggin*, Me., 379 A.2d 155, 158 (1977). Even when the jury awards no damages at all, *see Beane v. Hartford*, 140 Me. 62, 65, 33 A.2d 927, 928 (1943), its assessment will not be set aside "if it is supported by credible evidence." *Avery v. Brown*, Me., 288 A.2d 713, 716 (1972). Here, the jury's refusal to award damages was justifiable, notwithstanding their special verdict finding that defendant was negligent, on the basis of their assessment of the credibility of the witnesses.

*See id.* at 715. With respect to the problem with plaintiff's left ulnar nerve, the jury was entitled to believe Dr. Griffin's testimony that the June 1978 accident was not a factor in causing that condition. With respect to the headaches and other discomfort she claimed she suffered in the time period following the accident, plaintiff was the sole witness tying those difficulties causatively to the accident. In light of the discrepancies in other parts of her testimony, the jury could have disbelieved plaintiff's attribution of those symptoms to the automobile collision. The jury could rationally have concluded that even though defendant's negligence was responsible for the June 1978 collision, plaintiff suffered no injuries therefrom.

The case at bar is not one where the jury has found that defendant's negligence has injured plaintiff, but has then gone against the weight of the evidence in setting the amount of plaintiff's damages. *Cf. Chenell v. Westbrook College*, Me., 324 A.2d 735 (1974) (award of only $5000 to professional dancer for permanent injury to a leg). Rather, in this case the jury found specially that plaintiff had no injuries at all as a result of the collision. At trial, plaintiff failed to sustain her burden of proof; she did not convince the jury by a fair preponderance that any of her alleged physical difficulties had any causative connection to the accident. "The verdict of a jury is entitled to great respect ...." *Avery v. Brown, supra* at 714. By no possibility could either the trial court or the Law Court say that the jury's special verdict here "is so manifestly and palpably wrong that it is contrary to right and justice." *Id.*

The entry must be:

Judgment affirmed.

All concurring.