STATE of Maine

v.

William LINSCOTT.

Supreme Judicial Court of Maine.

Argued Nov. 14, 1986.
Decided Jan. 28, 1987.

James E. Tierney, Atty. Gen., Wayne S. Moss (orally), Asst. Atty. Gen., Augusta, for plaintiff.

Newcomb & Pyne, Frederick M. Newcomb, III (orally), Rockland, for defendant.

Before NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

SCOLNIK, Justice.

William Linscott appeals from a judgment following a jury-waived trial in the Superior Court, Waldo County, convicting him of one count of murder, 17–A M.R.S.A. § 201(1)(A) (1983), and one count of robbery, 17–A M.R.S.A. § 651(1)(D) (1983). He contends that his conviction of intentional or knowing murder as an accomplice under the accomplice liability statute, 17–A M.R.S.A. § 57(3)(A) (1983), violated his constitutional right to due process of law in that he lacked the requisite intent to commit murder. We find no merit in the defendant's argument and affirm the judgment.

The facts are not in dispute. On December 12, 1984, the defendant, then unemployed, and two other men—the defend-

ant's step-brother, Phillip Willey, and Jeffrey Colby—drove from his trailer in Belmont, Maine to the house of a friend, Joel Fuller. Fuller, with a sawed-off shotgun in his possession, joined the others. The defendant drove to the residence of Larry Ackley, where Fuller obtained 12–gauge shotgun shells.

Later that evening, Fuller suggested that the four men drive to the house of a reputed cocaine dealer, Norman Grenier of Swanville, take Grenier by surprise, and rob him. The defendant agreed to the plan, reasoning that Grenier, being a reputed drug dealer, would be extremely reluctant to call the police and request they conduct a robbery investigation that might result in the discovery of narcotics in his possession. Fuller stated that Grenier had purchased two kilograms of cocaine that day, and that Grenier had been seen with $50,000 in cash. Fuller guaranteed the defendant $10,000 as his share of the proceeds of the robbery.

The four drove up to Grenier's house, which was situated in a heavily wooded rural area on a dead-end road in Swanville. The defendant and Fuller left the car and approached the house. The defendant carried a hunting knife and switchblade, and Fuller was armed with the shotgun. Willey and Colby drove off in the defendant's car and returned later for the defendant and Fuller.

The defendant and Fuller walked around to the back of Grenier's house. At that time, Grenier and his girlfriend were watching television in their living room. The defendant and Fuller intended to break in the back door in order to place themselves between Grenier and the bedroom, where they believed Grenier kept a loaded shotgun. Because the back door was blocked by snow, the two men walked around to the front of the house. Under their revised plan the defendant was to break the living room picture window whereupon Fuller would show his shotgun to Grenier, who presumably would be dissuaded from offering any resistance.

The defendant subsequently broke the living room window with his body without otherwise physically entering the house. Fuller immediately fired a shot through the broken window, hitting Grenier in the chest. Fuller left through the broken window after having removed about $1,300 from Grenier's pants pocket, later returning to the house to retrieve an empty shotgun casing. The two men returned to the road and waited behind a bush for the return of the defendant's car. The defendant and Fuller were later dropped off at Fuller's house, where both men burned several articles of their clothing. Fuller gave the defendant $500, presumably from the money stolen from Grenier.

On March 27, 1985, the defendant was indicted on one count of murder, 17–A M.R.S.A. § 201(1)(A) (1983), and one count of robbery, 17–A M.R.S.A. § 651(1)(D) (1983). At a jury-waived trial, which commenced on January 6, 1986, the defendant testified that he knew Fuller to be a hunter and that it was not unusual for Fuller to carry a firearm with him, even at night. He nevertheless stated that he had no knowledge of any reputation for violence that Fuller may have had. The defendant further testified that he had no intention of causing anyone's death in the course of the robbery.

At the completion of the trial on January 8, 1986, the trial justice found the defendant guilty of robbery and, on a theory of accomplice liability, found him guilty of murder. The court specifically found that the defendant possessed the intent to commit the crime of robbery, that Fuller intentionally or at least knowingly caused the death of Grenier, and that this murder was a reasonably foreseeable consequence of the defendant's participation in the robbery. However, the court also found that the defendant did not intend to kill Grenier, and that the defendant probably would not have participated in the robbery had he believed that Grenier would be killed in the course of the enterprise.

The sole issue raised on appeal is whether the defendant's conviction pursuant to

the second sentence of subsection 3–A of the accomplice liability statute, 17–A M.R.S.A. § 57 (1983),[1] unconstitutionally violates his right to due process under Article I, section 6–A of the Maine Constitution and the Fourteenth Amendment of the United States Constitution. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). The defendant contends that the accomplice liability statute impermissibly allows the State to find him guilty of murder, which requires proof beyond a reasonable doubt that the murder was committed either intentionally or knowingly, without having to prove either of these two culpable mental states. Instead, the defendant argues, the accomplice liability statute permits the State to employ only a mere negligence standard in convicting him of murder in violation of his right to due process. We find the defendant's argument to be without merit.

The second sentence of section 57(3)(A) endorses the "foreseeable consequence" rule of accomplice liability. *See State v. Goodall*, 407 A.2d 268, 278 (Me.1979).[2] In that case we stated that

> [t]he history of the statute demonstrates that the legislature indeed intended to impose liability upon accomplices for those crimes that were the reasonably foreseeable consequence of their criminal enterprise, *notwithstanding an absence on their part of the same culpability required for conviction as a principal to the crime.*

*Id.* (emphasis added). Accordingly, we have stated that section 57(3)(A) is to be interpreted as follows: Under the first sentence of that section, which is to be read independently of the second sentence,

> liability for a "primary crime" ... [here, robbery] is established by proof that the actor intended to promote or facilitate that crime. Under the second sentence, liability for any "secondary crime" ... [here, murder] that may have been committed by the principal is established upon a two-fold showing: (a) that the actor intended to promote the *primary crime*, and (b) that the commission of the secondary crime was a "foreseeable consequence" of the actor's participation in the primary crime.

*Id.* at 277–278 (footnote omitted; emphasis in original). We have consistently upheld

---

1. 17–A M.R.S.A. § 57(3)(A) (1983) provides:

 3. A person is an accomplice of another person in the commission of a crime if:

 A. With the intent of promoting or facilitating the commission of the crime, he solicits such other person to commit the crime, or aids or agrees to aid or attempts to aid such other person in planning or committing the crime. *A person is an accomplice under this subsection to any crime the commission of which was a reasonably foreseeable consequence of his conduct* ...
(Emphasis added).

2. The "foreseeable consequence" or "natural and probable consequence" rule in complicity law has been stated as follows: "an accessory is liable for any criminal act which in the ordinary course of things was the natural or probable consequence of the crime that he advised or commanded, although such consequence may not have been intended by him." 22 C.J.S. *Criminal Law* § 92 (1961) (footnote omitted). *See also* Robinson, *Imputed Criminal Liability,*

93 Yale L.J. 609, 617 & n. 24 (1984); Kadish, *Complicity, Cause and Blame: A Study in the Interpretation of Doctrine,* 73 Calif.L.Rev. 323, 353 & n. 69 (1985); Dressler, *Reassessing the Theoretical Underpinnings of Accomplice Liability: New Solutions to an Old Problem,* 37 Hastings L.J. 91, 97 & n. 30 (1985); Comment, *Wisconsin's Party to a Crime Statute: The Mens Rea Element Under the Aiding and Abetting Subsection, and the Aiding and Abetting-Choate Conspiracy Distinction,* 1984 Wis.L.Rev. 769, 787–789 (1984); *but cf.* LaFave & Scott, *Criminal Law* § 65 at 515–517 (1972). The rule has also been adopted in several other jurisdictions. *See* Wis.Stat.Ann. § 939.05(2)(c) (West 1982); Minn. Stat.Ann. § 609.05(2) (West 1964); Iowa Code Ann. § 703.2 (West 1979) and Kan.Stat.Ann. § 21–3205 (1981). Although the Maine statute is derived from the New Hampshire Criminal Code, N.H. Rev.Stat.Ann. § 626:8, and is based on the Model Penal Code § 2.06, *see* Comment—1975 to 17–A M.R.S.A. § 57 (1983), both of those provisions reject the foreseeable consequence rule.

this interpretation of section 57(3)(A). *See State v. Armstrong*, 503 A.2d 701, 703 (Me.1986); *State v. Johnson*, 434 A.2d 532, 538 (Me.1981); *State v. Kimball*, 424 A.2d 684, 693 (Me.1981); *State v. Anderson*, 409 A.2d 1290, 1303 (Me.1979). We discern no compelling reason to depart from this construction of the statute.

Furthermore, the foreseeable consequence rule as stated in Section 57(3)(A) merely carries over the objective standards of accomplice liability as used in the common law. *See State v. Goodall*, 407 A.2d at 278, citing *State v. Simpson*, 276 A.2d 292, 295 & n. 2 (Me.1971).[3] Thus, a rule allowing for a murder conviction under a theory of accomplice liability based upon an *objective* standard, despite the absence of evidence that the defendant possessed the culpable *subjective* mental state that constitutes an element of the crime of murder, does not represent a departure from prior Maine law.

 Moreover, we have upheld the constitutionality of two related statutes, the felony murder statute, 17–A M.R.S.A. § 202 (1983), and the depraved indifference murder statute, 17–A M.R.S.A. § 201(a)(B), (1–A) (1983 & Supp.1986). *See State v. Reardon*, 486 A.2d 112 (Me.1984); *State v. Michaud*, 513 A.2d 842 (Me.1986). As in the felony murder and depraved indifference statutes, the Legislature in enacting the accomplice liability statute similarly intended that a *subjective* culpable mental state on the part of the accomplice is not required. So long as the accomplice intended to promote the primary crime, and the

commission of the secondary crime was a foreseeable consequence of the accomplice's participation in the primary crime, no further evidence of the accomplice's subjective state of mind as to the secondary crime is required. We find no fundamental unfairness in this statutory scheme.

 We also do not find fundamentally unfair or disproportionate the grading scheme for sentencing purposes between felony murder and murder premised on a theory of accomplice liability,[4] because, as we stated in *State v. Kimball*, there is a "critical difference between 'accomplice' guilt of the crime of 'Murder' in violation of Section 201 and guilt of the separate and distinct offense of 'Felony murder' in violation of Section 202 ...":

This critical difference relates to the *nature* of the homicide required to be "a reasonably foreseeable consequence." The guilt of defendant A of Section 202 "Felony murder" can arise because a person's *death* is caused by the actions of defendant B alone, even though the circumstances are *not* such that defendant B's conduct in causing the *death* becomes *"Murder"*, in violation of Section 201. In contrast, defendant A's guilt of Section 201 "Murder," by reason of "accomplice" accountability under Section 57(1) in combination with the second sentence of Section 57(3)(A), can arise *only if,* as an indispensible element, the commission by defendant B of *the crime of Section 201 "Murder"* was "a reasonably foreseeable consequence of ... [the]

---

**3.** For example, in one pre-Code case we stated that "[n]o principle of criminal law is more firmly established than this, that when two persons combine and conspire together for the common object of robbery and in pursuance of that object one of them does an act which causes the death of another both are regarded as principals and both may be convicted of murder ... *People v. Friedman*, 205 N.Y. 161, 98 N.E. 471 [1912] ..." *State v. Priest*, 117 Me. 223, 231, 103 A. 359, 363 (1918), *criticized on other grounds, State v. Collins*, 297 A.2d 620, 636 (Me.1972). In *Friedman*, the New York Court of Appeals stated that "[i]f the natural and probable consequence of the common enterprise was

the killing of [the victim] in case of resistance on his part, the defendant was liable for murder in the first degree, although he did not do the actual killing." *Id.* 98 N.E. at 473. *See also State v. Rainey*, 149 Me. 92, 96–97, 99 A.2d 78, 81 (1953).

**4.** Murder under section 201 carries a minimum sentence of 25 years imprisonment and a maximum of life imprisonment. 17–A M.R.S.A. § 1251 (Supp.1986). Felony murder under section 202 is a Class A offense, carrying a maximum sentence of 20 years imprisonment. 17–A M.R.S.A. §§ 202(3), 1252(2)(A) (1983).

conduct" of defendant A described in the first sentence of Section 57(3)(A).

*Id.,* 424 A.2d at 692 (emphasis in original). The potential penalty of life imprisonment for murder under a theory of accomplice liability based on an objective standard "does not denote such punitive severity as to shock the conscience of the public, nor our own respective or collective sense of fairness." *State v. Reardon,* 486 A.2d at 121. "In the criminal homicide field the jurisprudence of this State has been constant in maintaining that the *subjective* mental, emotional or other behavioral state or condition of the defendant not be an indispensably controlling factor in evaluation of the punitive seriousness of the crime." *Id.* (emphasis in original).

For the foregoing reasons, we find no constitutional defect in this statutory provision, nor any fundamental unfairness in its operation.

The entry is:

Judgment affirmed.

All concurring.