**STATE of Maine**

v.

**FLINT H.**

Supreme Judicial Court of Maine.

Submitted on Briefs May 12, 1988.
Decided July 13, 1988.

Janet T. Mills, Dist. Atty., Kevin J. Regan, Asst. Dist. Atty., Auburn, for plaintiff.

Gerard O. Fournier, Isaacson & Raymond, Lewiston, for defendant.

Before McKUSICK, C.J., and
ROBERTS, WATHEN, GLASSMAN,
SCOLNIK and CLIFFORD, JJ.

WATHEN, Justice.

Flint H., a juvenile, appeals to this Court from an order of the Superior Court (Androscoggin County) denying his appeal from the District Court (Livermore Falls). The District Court, acting as the Juvenile Court pursuant to 15 M.R.S.A. § 3101(1) (1980), entered an adjudication against Flint H. for attempted murder (17-A M.R.S.A. §§ 152 and 201 (1983)) and aggravated assault (17-A M.R.S.A. § 208 (1983)) on the theory of accomplice liability (17-A M.R.S.A. § 57 (1983)). On appeal, Flint H. contends that there was insufficient evidence to support the judgments, that the accomplice statute is void for vagueness, and that the Juvenile Court erred in admitting into evidence certain medical testimony. Further, he contends that the disposition ordered by the Juvenile Court constituted an abuse of discretion. Finding no error, we affirm the judgments.

The relevant facts may be summarized as follows: The Juvenile Court adjudicated Flint H., for being an accomplice to Eric J. in connection with Eric J.'s attempts to poison his mother. While working as a custodian at a high school, Eric J. acquired toxic chemicals from the chemistry storeroom and administered them to his mother on six separate occasions by mixing them in her medication capsules and her drinks. Eric J. conferred with Flint H. before and after each attempt. Flint H. appealed to the Superior Court from the adjudication order and the resulting disposition order on a variety of points. The Superior Court denied the appeal. Flint H. now appeals to

this Court from both the adjudication order and the disposition order.

■ Preliminarily, we note that this Court's jurisdiction is limited by 15 M.R.S.A. § 3407(2)(A) (Supp.1987) to decisions of the Superior Court on appeal from the Juvenile Court concerning an adjudication only.[1] This Court "does not have jurisdiction to consider the propriety of the dispositional order of the Juvenile Court." *State v. Roy E.S.*, 440 A.2d 1025, 1027 (Me.1982). The Superior Court's conclusion that the Juvenile Court did not abuse its discretion is final. *Id.*

In reviewing the juvenile's arguments on the adjudication order, we independently review the record of the Juvenile Court and give no presumptive validity to the action taken by the Superior Court. *Id.* To sustain an adjudication on appellate review, there must be proof, when viewed in the light most favorable to the State, from which a factfinder could rationally have found the elements of the offense beyond a reasonable doubt. *State v. Barry*, 495 A.2d 825, 826 (Me.1985). Flint H. contends that there was insufficient evidence to support his adjudication as an accomplice, on the basis that there was no evidence of an overt act on his part. In pertinent part 17–A M.R.S.A. § 57(3)(A) (1983) provides that:

> 3. A person is an accomplice of another person in the commission of a crime if:
> A. With the intent of promoting or facilitating the commission of the crime, he ... aids or agrees to aid or attempts to aid such other person in planning or committing the crime. A

person is an accomplice under this subsection to any crime the commission of which was a reasonably foreseeable consequence of his conduct;

Although we have never expressly required an overt act as a predicate for accomplice liability, we have required a degree of active participation. We have noted that generally neither mere condonation nor passive acquiescence alone will suffice. *State v. Doody*, 434 A.2d 523, 530 (Me. 1981). We have also stated that mere presence at the scene of a crime is inadequate to prove accomplice liability. *State v. Gervais*, 394 A.2d 1183, 1185 (Me.1978).

■ In both *Doody* and *Gervais*, however, we found sufficient evidence of participation beyond the mere acquiescence or presence of the defendant. In *Doody*, 434 A.2d at 530, we found that defendant's remark to her husband to the effect that she would not give him any problem demonstrated an undertaking not to interfere with his plans. Such conduct was found to involve more than mere passive acquiescence and she was convicted for the murder of her mother by her husband on the theory of accomplice liability. In *Gervais*, 394 A.2d at 1185 (citing *State v. Mower*, 317 A.2d 807, 812 (Me.1974)),[2] we found that "[e]ven though defendant may not have been shown to engage in any *overt act of assistance,* his presence as a friend could be taken as a circumstance suggesting encouragement...." (emphasis added). The defendant in *Gervais* was a passenger in an automobile during and after the burglary of a house by the operator of the automobile, and although he was free to

---

1. 15 M.R.S.A. § 3407(2)(A) in pertinent part provides:

   Decisions of the Superior Court on appeal from the juvenile court, as to matters described in section 3402, subsection 1, paragraphs A and B only, may be appealed to the Law Court by an aggrieved party.

   15 M.R.S.A. § 3402(1) (1980) in pertinent part provides:

   Appeals of the following matters may be taken from the juvenile court to the Superior Court by a party specified in subsection 2:

   A. An adjudication, provided that no appeal shall be taken until after an order of disposition;

   B. An order of disposition, or of any subsequent order modifying disposition, for an abuse of discretion;

2. In *State v. Mower,* we were concerned with the prior statute for accessories before the fact and principals in the second degree. We stated that "[i]t is sufficient if such person aided, abetted, assisted, *advised or encouraged* another in the commission of the crime." *State v. Mower,* 317 A.2d at 811 (quoting *State v. Berube,* 158 Me. 433, 434, 185 A.2d 900, 901–02 (1962) (emphasis added). We found presence under some circumstances could indicate active encouragement of the crime. *Id.* at 812.

separate from the actual offender, he continued to ride with him after the burglary. *Id.* at 1185–86. On the basis of *Doody* and *Gervais,* we hold that, although accomplice liability requires more than mere presence or acquiescence, it does not necessarily require an overt act of assistance. The evidence in this case amply supports the conclusion that Flint H. became an accomplice by actively furnishing advice and encouragement.

Although Flint H. was not present when Eric J. administered the poison, by his own testimony, there is evidence that he conferred with Eric J. both before and after six unsuccessful attempts to do away with Eric J.'s mother. There is evidence that he advised Eric J. how to administer the poison. For example, there is testimony that he suggested putting the poison in her drink because it was not working in the pills. There is also testimony by Flint H. that he advised Eric J. that in order to prevent the rescue unit from frustrating his plans, he should keep the victim away from the phone. It is irrelevant whether Eric J. implemented these suggestions. 1 F. Wharton, *Criminal Law & Procedure* § 110, at 237–38 (Anderson ed. 1957). There is also testimony by Flint H. that he understood Eric J.'s motivation because Eric J.'s mother was very strict, and that he did not feel guilty about his part because he cared for Eric J. and thought this best for him. The evidence supports a finding of more than passive acquiescence. Flint H. did not simply listen to Eric J. Evidence of his advice and encouragement throughout *six* poisonings supports a finding that he aided or attempted to aid Eric J. in the planning of the crime with the intent to facilitate the commission of the crime.

■ Next, Flint H. argues that 17-A M.R.S.A. § 57(3)(A) is so vague as to violate the due process clause of the fourteenth amendment of the United States Constitution and article I, section 6-A of the Maine Constitution. Specifically, Flint H. argues that the words "promoting or facilitating" a crime, "aids," "agrees to aid," and "attempts to aid" are imprecise and ambiguous. A statute that purports to regulate human conduct with sanctions imposed for violation is unconstitutionally vague if "men of common intelligence must necessarily guess at its meaning." *S*** S*** v. State,* 299 A.2d 560, 568 (Me.1973) (quoting *Connally v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). "A statute is not unconstitutional and void for vagueness where the meaning of the words used can be fairly ascertained by reference to the common law and to the judicial determinations in respect thereto." *State v. Davenport,* 326 A.2d 1, 6 (Me.1974). "Judicial construction of a statute can implement a statutory concept as fully as an express legislative definition can." *Id.* at 5. In *Davenport,* we found constitutional under this approach the portion of the assault and battery statute defining an offense of a *high and aggravated* nature. *Id.* at 6–7. We noted that at the time of the defendant's indictment a number of cases had already been decided indicating the type of circumstances "which would be within the reasonable intendment of the legislative terminology...." *Id.* at 6. Likewise we have decided numerous cases concerning the type of conduct that constitutes "aiding and abetting." By virtue of the statute and the interpretive decisions, we find that a person of common intelligence is fairly informed of the conduct that will render him liable. Defendant has failed to establish that the statute is unconstitutionally vague.

■ Finally, Flint H. contends that the Juvenile Court erred when it admitted the opinion testimony of an expert witness concerning the cause of the victim's physical symptoms. A physician testified that based on her treatment and observation of the victim and her consultations with a hospital pharmacist and a gastroenterologist, it was her opinion that the victim's symptoms were consistent with poisoning by a foreign substance. Flint H. argues that the physician's opinion did not fall within the hearsay exception of M.R.Evid. 703 because the State did not lay the proper foundation. Rule 703 provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

"The admissibility of such opinion testimony is to be determined by the presiding justice, whose ruling will not be overturned unless clearly erroneous." *McLellan v. Morrison,* 434 A.2d 28, 30 (Me.1981). In *McLellan,* we upheld the admissibility of expert testimony by a physician concerning the lack of causal relationship between an accident and the person's medical condition, which opinion was based in part on a telephone conference between the physician and a neurosurgeon. *Id.* We stated that based on the physician's own training, experience and observations, the physician was fully qualified to offer his expert opinion and that confirming his opinion by consulting another expert was similar to consulting a medical textbook and did not make the opinion any less his own. *Id.* Likewise, in this case, given the treating physician's experience and training as an internist and her observations as the treating physician, admission of her opinion based in part on consultations with a hospital pharmacist and a gastroenterologist was not clearly erroneous.

The entry is:

Judgments affirmed.

All concurring.