STATE of Maine

v.

Daniel WILLIAMS.

Supreme Judicial Court of Maine.

Argued Nov. 4, 1994.
Decided Feb. 2, 1995.

Kathleen A. Roberts (orally), Asst. Atty. Gen., Augusta, for State.

Martha J. Harris (orally), Paine, Lynch & Harris, P.A., Bangor, for defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

DANA, Justice.

Daniel Williams appeals from a judgment entered in the Superior Court (Penobscot County, *Kravchuk, J.*) following a jury verdict finding him guilty of manslaughter, 17–A M.R.S.A. § 203(1)(A) (Supp.1994).[1] Williams argues that the Juvenile Court (Bangor, *Russell, J.*) erred in its decision to allow him to be bound over to the Superior Court, that the trial court allowed unfairly prejudicial evidence to be admitted, that the trial court impermissibly restricted the defense, that the instructions to the jury were improper, and that the prosecution's argument and rebuttal disparaged the defense and impermissibly commented on credibility. Finally, Williams challenges the sufficiency of the evidence. We find no merit in any of Williams's contentions and affirm the judgment.

### Facts

The evidence presented at trial may be summarized as follows. On March 21, 1992, Danny Williams, who was about two weeks short of his eighteenth birthday, and Pornchai Moontri[2] entered a Shop & Save supermarket in Bangor. Moontri attempted to steal a six-pack of beer and was confronted by Scott Goodspeed, the grocery manager, who took the beer and asked Moontri and Williams to leave the store. Moontri grabbed the beer and threw it into the case, breaking the bottles, and then hit Goodspeed in the face with his fist. Goodspeed and another employee, Mark Lajoie, followed Moontri and Williams as they walked to the front of the store. Moontri pulled a knife from his coat, swung it at Goodspeed, and then attacked Lajoie. Lajoie attempted to grab Moontri's wrist and Moontri cut Lajoie's fingers and stabbed him in the shoulder. Lajoie tried to run away, but Moontri, with Williams at his side, pursued and stabbed Lajoie in the back. When Williams

1. 17–A M.R.S.A. § 203(1)(A) (Supp.1994) provides:

    A person is guilty of manslaughter if that person ... [r]ecklessly, or with criminal negligence, causes the death of another human being[.]

2. Moontri was joined as a codefendant at the trial. He was convicted of intentional or knowing murder and depraved indifference murder, aggravated assault, criminal threatening with a dangerous weapon, and assault. We recently upheld the convictions in *State v. Moontri*, 649 A.2d 315 (Me.1994).

and Moontri were outside the store they turned to each other, did a celebratory "high-five," and began to walk across the parking lot.

Michael McDowell, an employee at another Shop & Save store, was in the parking lot and had seen the confrontation through the store window. McDowell stepped toward Moontri and Williams as they came out of the store and pointed his finger at them. Moontri and Williams attacked McDowell and began punching him. At first McDowell attempted to defend himself, but then bent over with his hands by the side of his head in an effort to ward off the blows he was getting from the front and back. McDowell tried twice to get up and, as he fell back the second time, Moontri and Williams renewed their attack. McDowell jumped up from the pavement and ran toward a bench near the front of the store, arching his back and screaming, "I'm burning up." McDowell, bleeding, collapsed on the bench. As two store employees advanced, Williams shouted, "He's got a knife, he's got a knife." Moontri and Williams fled, but were arrested that same night. McDowell died as a result of multiple stab wounds.

The State filed a juvenile petition charging Williams with two alternate counts of murder and one of aggravated assault. A bind-over hearing was held in August 1992, and the Juvenile Court found probable cause with respect to the murder charges. The court found that Williams should be bound over as an adult. The grand jury returned a two-count indictment that included intentional or knowing murder (Count I) and depraved indifference murder (Count II). The court subsequently granted the State's motion that Williams and Moontri be tried together. After an eight day trial, the jury returned a

verdict finding Williams guilty of the lesser included offense of manslaughter.

## The Bind–Over

■ Williams first argues that the State presented insufficient evidence at the bind-over hearing from which probable cause could be established that he was an accomplice to murder.[3] The State's initial burden at a bind-over proceeding is to establish probable cause to believe that a juvenile crime has been committed that would constitute murder or a Class A, Class B, or Class C crime and that the juvenile to be bound over has committed it. 15 M.R.S.A. § 3101(4)(E)(1) (Supp.1994). In the instant case, the State had to establish probable cause to believe that Williams was, at a minimum, an accomplice to the crime of assault against McDowell, that the murder of McDowell by Moontri occurred during the assault, and that the commission of the crime of murder by Moontri of McDowell was a reasonably foreseeable consequence of Williams's conduct.

■ The "reasonably foreseeable consequence" requirement with respect to accomplice liability sets forth an *objective* criterion, *i.e.*, what the average reasonable person would foresee in all the circumstances. *State v. Kimball,* 424 A.2d 684, 693 n. 4 (Me.1981). At the bind-over hearing, Jessica Blake described how Williams and Moontri "started beating up" McDowell when he tried to block their escape from the Shop & Save. Just before, with Williams at his side inside the store, Moontri had stabbed Lajoie. After the attack on McDowell, Williams confirmed his awareness of Moontri's use of the knife by shouting to two other Shop & Save employees, "He's got a knife, he's got a knife." The average reasonable person with knowledge that Moontri was wielding a knife would

---

**3.** 17–A M.R.S.A. § 57 (1983) provides in pertinent part:

    1. A person may be guilty of a crime if it is committed by the conduct of another person for which he is legally accountable as provided in this section.

    2. A person is legally accountable for the conduct of another person when:

    C. He is an accomplice of such person in the commission of the crime, as provided in subsection 3.

3. A person is an accomplice of another person in the commission of a crime if:

A. With the intent of promoting or facilitating the commission, he solicits such other person to commit the crime, or aids or agrees to aid or attempts to aid such other person in planning or committing the crime. A person is an accomplice under this subsection to any crime the commission of which was a reasonably foreseeable consequence of his conduct.

have reasonably foreseen that the joint attack on McDowell could result in McDowell's death. Therefore, the Juvenile Court properly found probable cause that Williams was an accomplice to either the intentional and knowing murder or the depraved indifference murder of McDowell.

■ Williams next argues that the Juvenile Court committed an error of law in focusing on only one of the required factors to be considered by the court pursuant to 15 M.R.S.A. § 3101(4)(D) (Supp.1994) in deciding that Williams should be bound over. Williams asserts that he was bound over solely because the Juvenile Court determined that the length of incarceration of a juvenile allowed in the juvenile system pursuant to 15 M.R.S.A. § 3314 (Supp.1994) would seriously diminish the gravity of the offense. In deciding whether to bind a juvenile over to the Superior Court, the Juvenile Court shall consider (1) the seriousness of the crime, (2) the characteristics of the juvenile, and (3) dispositional alternatives. 15 M.R.S.A. § 3101(4)(D) (Supp.1994). The Juvenile Court must find by a preponderance of the evidence that, after a consideration of the three factors, it is appropriate to prosecute the juvenile as if he were an adult. 15 M.R.S.A. § 3101(4)(E)(2) (Supp.1994).

■ "[T]he statute does not dictate the weight to be given to the specific factors, nor does it provide that each factor must be affirmatively shown before it is appropriate to prosecute a juvenile as an adult." *State v. Sanborn*, 644 A.2d 475, 478 (Me.1994). In its findings in the instant case, the Juvenile Court considered all the factors. The court found that murder is the most serious crime under the laws of the State of Maine and that Williams's participation was aggressive and violent. The court spent considerable time discussing Williams's social history and his long involvement with the juvenile system. The court determined that because of Williams's age (the crime was committed about two weeks before his eighteenth birthday), his social history and involvement with the juvenile system, and the seriousness of

the crime, the dispositional alternatives available in the juvenile system were not sufficient. The Juvenile Court did not commit an error of law or abuse its discretion in concluding that it was appropriate to prosecute Williams as if he were an adult and in waiving the jurisdiction of the Juvenile Court over him.

### *Admissibility of Evidence*

■ Williams argues that neither the testimony of Jody Bell nor the knife found in Williams's possession should have been admitted over his objection because the testimony and the knife did not constitute relevant evidence, and even if relevant, were more prejudicial than probative.[4] The trial court determined that this evidence was relevant and that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. We review the trial court's evidentiary rulings for clear error or an abuse of discretion. *State v. Shuman*, 622 A.2d 716, 718 (Me.1993). The question of relevancy of proffered evidence is reviewed under a clear error standard. *State v. Robinson*, 628 A.2d 664, 666 (Me. 1993). The decision to admit or exclude evidence is more frequently reviewed under an abuse of discretion standard "because the question of admissibility frequently involves the weighing of probative value against considerations militating against its admissibility." *Id.; see also* M.R.Evid. 403. We find no clear error or abuse of discretion in the court's ruling. *Shuman*, 622 A.2d at 718. *See State v. Trafton*, 425 A.2d 1320, 1324 (trial court could properly have excluded the evidence "only if the danger of unfair prejudice *substantially* outweighed its probative value") (emphasis in original).

Williams also argues that the Superior Court abused its discretion by admitting colored photographs of the bloody bench. He asserts that the photographs' "gruesome nature was such that it was substantially prejudicial." The photographs at issue in this appeal were also challenged in *State v. Moontri*, 649 A.2d 315, 317 (Me.1994). We

---

4. Bell, a Shop & Save employee, testified that Williams and Moontri made lewd comments to her while she was working in the store on the night McDowell was killed. With respect to the knife, the State had stipulated that it was analyzed and no blood was found on it.

found this decision was well within the discretion of the trial court. *Id.* *See State v. Conwell*, 392 A.2d 542, 544 (Me.1978) ("It is settled law in this jurisdiction that the admissibility of photographs is left largely to the discretion of the presiding Justice.").

■ Williams next argues that the State struck an unfair blow in pulling out a red smock from Shop & Save worn by one of the victims, showing it to the witness, and stating "those 25 guys were wearing uniforms like this were they?"[5] Williams contends that his motion made three days later seeking a mistrial should not have been denied. When this issue was raised in *Moontri* we found no error. The question was argumentative and the court sustained defendant's objection. Nothing further was required. *Moontri*, 649 A.2d at 316.

■ Williams finally contends that the court erred by not allowing him to present the testimony of a neuropsychologist, Dr. Stephen McKay, as a second expert witness. Williams argues that the testimony was relevant because he was charged with accomplice liability and therefore his "perceptions, understandings, intentions and his abilities to foresee were critical." The law, however, does not require that Williams actually foresee the consequences of murder or manslaughter from his own conduct during the commission of the assault on McDowell. *See Kimball*, 424 A.2d at 693 n. 4 (the "reasonably foreseeable consequence" requirement with respect to accomplice liability sets forth an *objective* criterion). Therefore, the trial court's determination that McKay's testimony was not relevant was not clearly erroneous.

*Jury Instructions*

Williams argues that the court's instruction to the jury on the charge of murder was erroneous and unfairly prejudicial because it permitted a conviction if some members of the jury found the facts necessary to convict Williams of intentional and knowing murder and the balance of the jury found the facts necessary to convict Williams of depraved indifference murder. Williams also contends that it was error to provide the instructions in writing to the jury over his objections. Williams further argues that the court should have given his proposed instructions.

■ Because the jury returned a verdict of guilty to the lesser included offense of manslaughter, any error in the murder instructions was harmless. *See State v. Bowman*, 588 A.2d 728, 732 (Me.1991). The instructions with respect to accomplice liability to manslaughter were proper.[6] Furthermore, the "court, at its election, may provide written instructions to the jury covering all or a part of what is orally provided." M.R.Crim.P. 30(b). *See* 14 M.R.S.A. § 1105 (1980). Finally, the trial court's decision not to amplify or further explain an instruction in the context of the facts of the case will not constitute a reversible error if "the instructions given by the trial court are substantially correct and the legal situation is made clear to the jury...." *Pelky v. Canadian Pac. Ltd.*, 586 A.2d 1248, 1251 (Me.1991). Because the court's instructions were substantially correct and the legal situation was made clear to the jury, there was no error.

*The State's Argument and Rebuttal Argument*

■ Williams contends that, during closing argument, the prosecutor made improper

---

5. Moontri's brother had testified that he and Moontri had previously been victimized by a gang of youths.

6. The court, in pertinent part, stated as follows: The [S]tate must prove the following four elements beyond a reasonable doubt to establish that Daniel Williams is legally accountable as an accomplice to Pornchai Moontri in the commission of manslaughter against Michael Scott McDowell. First, that Daniel Williams intended to promote or facilitate the commission of the crime of assault against Michael

Scott McDowell. Second, that Daniel Williams aided or agreed to aid Pornchai Moontri in assaulting Michael Scott McDowell. And third, that the commission of the crime of murder or manslaughter against Michael Scott McDowell by Pornchai Moontri occurred during the assault. And fourth, that the commission of the crime of manslaughter was a reasonably foreseeable consequence of Daniel Williams's own conduct during the commission of the assault.

statements of opinion concerning the credibility of a witness. Because Williams failed to object to the challenged statements at trial, we review only for obvious error affecting substantial rights. M.R.Crim.P. 52(b); *State v. True*, 438 A.2d 460, 467 (Me.1981). We will reverse a trial court judgment on the basis of an error that was not called to the attention of the court at the time it occurred only when the error complained of is so highly prejudicial and so taints the proceeding as to virtually deprive the defendant of a fair trial. *True*, 438 A.2d at 468.

■ Here, Williams challenges the prosecutor's statements that his version of the facts was not the way it happened.[7] A lawyer is permitted to "argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated therein...." *State v. Harnish*, 560 A.2d 5, 9 (Me.1989) (quoting M.Bar R. 3.7(e)(2)(v)). There were five witnesses who testified that Moontri and Williams attacked McDowell and that McDowell was leaning forward with his hands over his head in an effort to protect himself. Only Williams testified that McDowell had the upper hand. Witnesses testified that Moontri and Williams were simultaneously punching McDowell from the back and front. The prosecutor's comments were based on the evidence. While it may be possible to characterize these comments as expressing the prosecutor's personal opinion of Williams's credibility, they do not rise to the level of obvious error.

### Sufficiency of the Evidence

■ Williams next challenges the sufficiency of the State's evidence. "We will not overturn a conviction for insufficiency of the evidence unless in reviewing the evidence in the light most favorable to the State, we conclude that the factfinder could not ration-ally find every element of the criminal charge beyond a reasonable doubt." *State v. Pike*, 632 A.2d 132, 133 (Me.1993). The weight to be given to the evidence and determinations of witness credibility are the exclusive province of the factfinder. *State v. Glover*, 594 A.2d 1086, 1088 (Me.1991).

Williams was properly found guilty of the crime of manslaughter as Moontri's accomplice in the commission of an assault.[8] The manslaughter was a reasonably foreseeable consequence of Williams's own conduct in promoting or facilitating Moontri's assault on McDowell. The evidence admitted at trial provided a rational basis for the jury to find that Williams intended to facilitate the crime of assault against McDowell, that Williams actually aided in or attempted to aid Moontri in the commission of the crime of assault against McDowell, that Moontri personally caused McDowell's death under circumstances that constitute manslaughter, and that manslaughter was a reasonably foreseeable consequence of Williams's own conduct during the commission of the assault on McDowell. Viewing this evidence in the light most favorable to the State, the jury rationally could find beyond a reasonable doubt that Williams is guilty of accomplice liability to manslaughter.

The entry is:

Judgment affirmed.

All concurring.

---

7. In his argument, the Prosecutor stated: "And Danny Williams's description of what happened out there is not the way it happened." He continued in his rebuttal argument:

    You can decide whether to believe Jessica Blake and Virginia Sodermark about what they observed out there or not. You can believe Danny Williams's version of what happened out there. But Jessica's testimony was very specific about what happened there. They either saw it or they didn't. If they didn't see it, they're lying. And I'll be content with your determination as to whether Virginia Sodermark and Jessica Blake are lying about this case.

8. 17–A M.R.S.A. § 207(1) (1983) provides in pertinent part:

    A person is guilty of assault if he intentionally, knowingly or recklessly caused bodily injury ... to another.