MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2014 ME 69
Docket:      Pen-13-340
Argued:      April 7, 2014
Decided:     May 22, 2014

Panel:       SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

STATE OF MAINE

v.

MICHAEL W. CHAPMAN

JABAR, J.

[¶1]  Pursuant to 15 M.R.S. § 2115-A(2) (2013), the State appeals from a judgment of acquittal entered by the trial court (*Anderson, J.*) in favor of Michael W. Chapman, following a trial at which a jury found Chapman guilty of one count each of arson (Class A), 17-A M.R.S. § 802(1)(A) (2013), burglary (Class C), 17-A M.R.S. § 401(1)(A) (2013), aggravated criminal mischief (Class C), 17-A M.R.S. § 805(1)(A) (2013), and theft (Class C), 17-A M.R.S. § 353(1)(B)(4) (2013).  On appeal, the State contends that there was ample evidence on which the jury could have concluded beyond a reasonable doubt that Chapman committed arson, either directly or as an accomplice, *see* 17-A M.R.S. § 57(3)(A) (2013), and, accordingly, that the court erred in entering a judgment of acquittal as a matter of law, *see* M.R. Crim. P. 29(b).  Because there was sufficient evidence from which the jury could rationally have found beyond a reasonable

2

doubt that Chapman was an accomplice to the arson, we vacate the judgment of acquittal and remand the matter for entry of a judgment of conviction with regard to the arson charge and for sentencing.

## I. BACKGROUND

[¶2]  Viewing the evidence as a whole in the light most favorable to the State, a rational fact-finder could have found beyond a reasonable doubt the following facts.  *State v. Barnard*, 2001 ME 80, ¶ 10, 772 A.2d 852.  Michael Chapman and three others—Clifford Sprague, Rosemary Peterson, and Robert Mason—were participants in a scheme to burglarize a convenience store in Corinth.  Although the break-in did not take place until the early-morning hours of June 22, 2012, the foundation for their plan began at least two days beforehand, when, on June 20, a member of the group stole a 2002 GMC pickup truck from a dealership lot in Corinna.  The truck was driven to Sprague's home in Exeter, where it was hidden on his property.  The dealership license plates were removed from the truck and replaced with plates that had been stolen from another vehicle.

[¶3]  On June 21, the members of the group, including Chapman, were in continuous phone contact with one another.  Cell-phone data obtained by law enforcement showed that Chapman arrived in Corinth sometime around 9:15 p.m. on the night of the burglary.  At about 10:00 p.m., Sprague, Peterson, and Mason drove to the convenience store in a minivan belonging to a member of the group.

Those three, unaccompanied by Chapman, entered the store and purchased several items. According to law enforcement testimony, the trip was made in order to case the store for the burglary planned for later that night.

[¶4] About four hours later, Chapman, Sprague, and Mason drove the stolen truck to the convenience store. Shortly before the burglary, Chapman made a phone call to Peterson, who was located nearby. Video surveillance taken from the store shows that at about 1:54 a.m., two men jumped out of the stolen truck before the driver intentionally backed the truck through the store's front doors. Two men entered the store through the smashed doors and stole lottery tickets, the lottery ticket case, and cartons of cigarettes. About a minute later, the three men fled the store in the stolen truck.

[¶5] Shortly after 2:00 a.m., on Black Road in Corinth, only a few miles from the burglarized store, a resident was awakened by a loud noise and saw a truck engulfed in flames on the street outside her home. Neither that resident nor any others on Black Road saw who was involved in the fire. While on the scene, firefighters learned that the truck may have been involved in the burglary of the convenience store. The connection between the arson and the burglary was confirmed when investigators found shards of glass from the store's front doors in the bed of the truck.

4

[¶6]   After the burglary, Chapman returned to his girlfriend's home in Levant, where just before 3:00 a.m. he placed four separate calls to Sprague, Mason, and Peterson.  Hours later, Sprague, Mason, and Peterson were arrested after law enforcement was able to track them down as they cashed in winning lottery tickets in the Lewiston-Auburn area.  Upon arresting Sprague, Mason, and Peterson, law enforcement officials located, among other items, stolen cigarettes in a washing machine, two pairs of gloves, and two cell phones with deleted call histories.  Later that day, Chapman was arrested at his girlfriend's home.  Law enforcement discovered several stolen cigarette cartons hidden behind a stove located in the home and the store's lottery ticket case concealed behind the home under a blanket and leaves.

[¶7]   At trial, a State fire investigator testified that he believed that the truck fire had been deliberately set, and Corinth's fire chief, who was at the scene of the fire, testified that he believed that the fire had been fueled by an accelerant.  After the State presented its evidence, Chapman moved for a judgment of acquittal.  *See* M.R. Crim. P. 29(a).  The court denied the motion with regard to the charges of burglary, theft, and aggravated criminal mischief, but took the motion under advisement with respect to the arson charge.  In his defense, Chapman presented two forensic DNA analysts from the State Police crime laboratory who testified

that none of the items located during the search of the stolen truck or minivan, including the two pairs of gloves, contained Chapman's DNA.

[¶8]  The court instructed the jury as to the elements of all four charged offenses, as well as the findings necessary to return a guilty verdict based on a theory of accomplice liability.  *See* 17-A M.R.S. § 57(3)(A).  Following its deliberations, the jury convicted Chapman on all charges.  Chapman renewed his motion for a judgment of acquittal as to the arson conviction, arguing that there was no direct evidence putting him at the scene of the arson or demonstrating that he started, caused, or maintained the fire.  *See id.* § 802(1)(A); M.R. Crim. P. 29(b).  Chapman further argued that he could not be guilty as an accomplice because it was not foreseeable that "a vehicle used in a burglary would be set on fire."  *See* 17-A M.R.S. § 57(3)(A).  After a hearing on the motion, the court granted Chapman's motion, acquitting him of the arson charge.  The State timely filed this appeal.  *See* M.R. App. P. 2(b)(2)(A).

## II.  DISCUSSION

[¶9]  The State argues that the trial court erred in entering a judgment of acquittal on the arson count because there was sufficient evidence in the record to support the jury's verdict.  "We review the grant of a motion for a judgment of acquittal after the trial and a verdict of guilty in the same manner as the trial court views the motion: whether, viewing the evidence as a whole from the standpoint

most favorable for the State, the jury rationally could not avoid having a reasonable doubt as to the defendant's guilt." *State v. Spooner*, 666 A.2d 863, 864-65 (Me. 1995). We do not defer to the trial court's determination on the legal issue, namely, the sufficiency of the evidence to support the jury's verdict as a matter of law. *See, e.g., State v. Tait*, 483 A.2d 745, 746 (Me. 1984). We do not substitute our judgment on the weight and the credibility of the evidence for that of the jury as fact-finder. *See State v. Blier*, 371 A.2d 1091, 1093 (Me. 1977).

[¶10] Pursuant to 17-A M.R.S. § 802(1)(A), a person is guilty of arson when he "starts, causes, or maintains a fire or explosion on the property of another with the intent to damage or destroy property thereon." "A person may be guilty of a crime if he personally does the acts that constitute the crime or if he is an accomplice of another person who actually commits the crime." *State v. Hurd*, 2010 ME 118, ¶ 29, 8 A.3d 651. A person is guilty as an accomplice, if

> [w]ith the intent of promoting or facilitating the commission of the crime, [he] solicits such other person to commit the crime, or aids or agrees to aid or attempts to aid such other person in planning or committing the crime. A person is an accomplice under this subsection to any crime the commission of which was a reasonably foreseeable consequence of [his] conduct.

17-A M.R.S. § 57(3)(A).

[¶11] We have interpreted section 57(3)(A) to provide two different bases for accomplice liability. *See State v. Linscott,* 520 A.2d 1067, 1069 (Me. 1987)

(stating that the two sentences of section 57(3)(A) are "to be read independently of [each other]").  "First, under sentence one, an accomplice could be liable for any primary crime committed by the principal if it was established that the alleged accomplice intended to promote or facilitate the commission of that crime."  *State v. Armstrong*, 503 A.2d 701, 703 (Me. 1986).  Although neither "mere presence" at the scene of a crime, *State v. Libby,* 435 A.2d 1075, 1077 (Me. 1981), "nor passive acquiescence alone will suffice," *State v*. *Flint H*., 544 A.2d 739, 741 (Me. 1988), once presence at the scene is proven, any conduct by the defendant, however "slight[]," that "promot[es] or facilitat[es]" the commission of the crime will be enough to sustain a conviction based on accomplice liability, *Libby,* 435 A.2d at 1077.

[¶12]   Additionally, section 57(3)(A)'s second sentence provides that an accomplice can be held liable "for any secondary crime that may have been committed by the principal if 1) the accomplice intended to promote the *primary* crime and 2) the commission of the secondary crime was a foreseeable consequence of the accomplice's participation in the primary crime." *Armstrong*, 503 A.2d at 703.  Thus, in order to prove accomplice liability pursuant to the second sentence, the State needs to show that "the defendant possessed the intentional mental state to be an accomplice to the primary crime and that the

8

commission of the secondary crime by another person was . . . reasonably foreseeable." *State v. Berry*, 1998 ME 113, ¶ 11 n.3, 711 A.2d 142.

[¶13] A "reasonably foreseeable consequence" is "any criminal act which in the ordinary course of things was the natural or probable consequence of the crime that he advised or commanded." *Linscott*, 520 A.2d at 1069, n.2 (quotation marks omitted); *State v. Bennett*, 658 A.2d 1058, 1064 (Me. 1995). This requirement "sets forth an *objective* criterion, i.e., what the average reasonable person would foresee in all the circumstances." *State v. Kimball*, 424 A.2d 684, 693 n.4 (Me. 1981). Although it is not essential for the State to show that the defendant "actually foresaw [in] his *own subjective* state of mind the probability" of the secondary crime, consideration by the jury of the defendant's subjective state of mind is still permissible. *Id.*

[¶14] The use of the standard of reasonable foreseeable consequence has thus far been limited to circumstances where a defendant's associate ultimately commits a more serious, violent crime than the defendant anticipated. *See Bennett*, 658 A.2d at 1064; *State v. Williams*, 653 A.2d 902, 908 (Me. 1995); *Kimball*, 424 A.2d at 693-94. In each of these cases, a clear "causal relationship" exists between defendant's conduct in promoting the intended crime and the unintended, but "reasonably foreseeable," subsequent crime. *State v. Fitch*, 600 A.2d 826, 828 (Me. 1991) (stating that the phrase "reasonably foreseeable consequence"

"establishes the necessity for a *causal relationship* between" the primary and secondary crime (emphasis added)). This "causal relationship," as our previous cases have shown, involves a degree of temporal and spatial proximity in order for the secondary crime to be considered reasonably foreseeable. *See Bennett*, 658 A.2d at 1064 (where manslaughter occurred during commission of assault); *Williams*, 653 A.2d at 908 (same); *Kimball*, 424 A.2d at 693-94 (where murder occurred during course of robbery).

[¶15] On appeal, the State focuses on section 57(3)(A)'s second sentence to support their contention that a rational jury could have found beyond a reasonable doubt that Chapman was guilty of arson as an accomplice. The State argues that the burning of the truck, an instrumentality of the crime, occurring only moments after and within a few miles of where the burglary was committed, was a reasonably foreseeable consequence to the burglary.

[¶16] At the outset, Chapman does not dispute on appeal that there was sufficient evidence for a rational jury to find that he participated in the burglary. Based on the evidence presented—most notably, the cell phone data, the video surveillance, and Chapman's possession of recently stolen items—a rational fact-finder could have found beyond a reasonable doubt that Chapman participated in that crime. *See* 17-A M.R.S. § 361-A(1) (2013). The question remains, however, whether the burning of the truck was a "reasonably foreseeable

consequence" to Chapman's participation in the burglary. Based on the circumstance in this case, we conclude that there was sufficient evidence for a rational jury to find beyond a reasonable doubt that it was.[1]

[¶17] The evidence showed that Chapman was part of an elaborate scheme to burglarize the convenience store. This scheme included the theft of a truck from a dealership lot, the changing of the truck's license plates, and its concealment on an associate's property for two days before the planned burglary. On the night of the crime, Chapman's associates cased the store using a different vehicle. Rather than damage one of their own personal vehicles, Chapman and his associates used the stolen truck as the means of gaining entry into the store. During the commission of the crime, the men concealed their identities and Chapman was in continuous contact with their getaway driver, who was located nearby. After the burglary, the group members concealed the stolen items and deleted their cell-phone call histories. Further, and of most significance, the group's means of committing the burglary—the stolen truck—was set ablaze within minutes after the burglary at a location only a few miles from the burglarized store. Viewed

---

[1] Because we conclude that there was sufficient evidence from which a rational jury could find Chapman guilty of arson as an accomplice pursuant to the second sentence of 17-A M.R.S. § 57(3)(A) (2013), we need not decide whether the evidence was sufficient to support a finding of guilt based upon Chapman's direct involvement in starting or causing the fire, *see* 17-A M.R.S. § 802(1)(A) (2013), or in promoting or facilitating the arson as an accomplice pursuant to section 57(3)(A)'s first sentence.

together, this provides sufficient evidence for a jury to find that the arson was both temporally and spatially connected to the burglary.

[¶18]  In sum, the evidence demonstrates a scheme by Chapman and his associates not only to commit a burglary, but also to conceal their involvement in its undertaking and to avoid police detection.  Viewed objectively, there was sufficient evidence to support a rational jury's finding that the destroying of the stolen truck used to break into the store—a form of destroying evidence—was a "reasonably foreseeable consequence" to Chapman's participation in the burglary. *See* 17-A M.R.S. § 57(3)(A); *Linscott*, 520 A.2d at 1069-70.  As a result, we vacate the trial court's judgment of acquittal and remand the matter back to the trial court for entry of a judgment of conviction as to the arson charge and for sentencing.

The entry is:

> Judgment vacated.  Remanded to the trial court for entry of a judgment of conviction of arson and sentencing.

**On the briefs:**

R. Christopher Almy, District Attorney, and Tracy Collins Lacher, Asst. Dist. Atty., Prosecutorial District V, Bangor, for appellant State of Maine

Seth D. Harrow, Esq., Vafiades, Brountas & Kominsky, LLP, Bangor, for appellee Michael W. Chapman

12

**At oral argument:**

Tracy Collins Lacher, Asst. Dist. Atty., for appellant State of Maine

Seth Harrow, Esq., for appellee Michael W. Chapman

Penobscot Unified Criminal Docket docket number CR-2012-2400
FOR CLERK REFERENCE ONLY