STATE of Maine

v.

Frank FAGONE.

Supreme Judicial Court of Maine.

Argued June 14, 1983.

Decided July 14, 1983.

David W. Crook, Dist. Atty., William Baghdoyan (orally), Asst. Dist. Atty., Augusta, for plaintiff.

Sandy & Sandy, Robert E. Sandy, Jr. (orally), Waterville, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE and WATHEN, JJ.

WATHEN, Justice.

Following a jury trial in Superior Court (Kennebec County), defendant Frank Fagone appeals from a judgment of conviction for failure to stop for a police officer (29 M.R.S.A. § 2501–A(2) (1983). On appeal, defendant argues that the court erred: (1)

in cautioning potential defense witness Richard Babbitt about possible self-incrimination and his right to refuse to testify; (2) in refusing to permit the defense to call Richard Babbitt as a witness; and (3) in failing to instruct the jury that, with respect to defendant's alleged failure to stop, deliberation should be limited to the signal given by deputy Thomas, as charged in the complaint. Because we find that the cautionary remarks made by the presiding justice violated defendant's right to compulsory process for obtaining witnesses in his favor and his right to due process of law, we sustain the appeal.

On the afternoon of December 18, 1981, defendant's nephew, Richard Babbitt, came to defendant's home and requested help in obtaining bail for his wife Bonnie, who was being held in the county jail in Augusta. Defendant, Babbitt, and defendant's girlfriend Marguerite Gouette drove in defendant's car to Augusta. They arrived there at approximately 7:00 p.m.

Upon arrival, Fagone went into the jail to inquire about Bonnie. He was informed that he would have to wait, and so he returned to the car. Shortly thereafter, Gouette walked to the jail to inquire about Bonnie. After approximately one half hour, Babbitt and defendant drove toward the jail.

At this point, Deputy Lamoreaux of the Kennebec County Sheriff's Department was on a surveillance detail outside of the county jail building. He was watching for an automobile in which Babbitt was believed to be a passenger. Babbitt was suspected of being an accomplice to the robbery for which his wife was being held. Lamoreaux observed defendant's vehicle park across the street from the courthouse. The operator of the vehicle "fit the description of one of the subjects" for whom he was looking. He yelled at the operator to stop, and signaled with a lit flashlight. The vehicle then pulled away, accelerating rapidly, and Lamoreaux had to dive out of the way.

Deputy Thomas, who was then leaving the courtyard in his police vehicle, watched from a distance of ten to fifteen feet. He saw the driver and identified him at trial as the defendant. He testified that he picked up Lamoreaux and followed defendant's vehicle, with blue lights flashing. After ²⁄₁₀th of a mile, defendant's car slid to a stop. When the officers approached the vehicle, defendant was in the driver's seat, and Babbitt was seated in the front passenger seat. The defendant was arrested for operating while under the influence and for failure to stop for a police officer.

At trial, defendant testified that Babbitt, and not he, had been driving. According to his testimony, their vehicle never stopped in front of the courthouse; they simply kept driving until they noticed the police following their vehicle.

At the conclusion of defendant's testimony, the presiding justice learned that the defense intended to call Babbitt as a witness. The court determined, *sua sponte,* that given the prior testimony at trial, it was appropriate for the court to advise Babbitt of his potential criminal liability. The following exchange then took place in the absence of the jury:

THE COURT: Mr. Babbitt, do you want to come forward? I just have a couple of matters I want to make inquiry of you about. It's my understanding you're going to be called as a witness for the defense, and I want you to be aware, before you are, that based on some testimony this morning, both inquired from the State and from the defense, there's a possibility that you could be implicated in several crimes in connection with this matter.

First of all, there was testimony this morning that at the time of the, of an incident out in front of the jail where an officer was allegedly, an attempt was made to run down an officer with a car that you were the driver, not the defendant Mr. Fagone in this matter. That could implicate you in two crimes. One a felony and one a misdemeanor. The felony that you could be implicated in would be one called reckless conduct with a dan-

gerous weapon, in this case an automobile. If in fact the State was able to prove you attempted to run down an officer. Do you understand that?

MR. BABBITT: Yes, sir.

THE COURT: Do you understand the maximum penalty of that charge would be a sentence of five years at the Maine State Prison and a twenty-five hundred dollar fine?

MR. BABBITT: (Nod in the affirmative.)

THE COURT: The other crime would be failure to stop for a police officer, because there was testimony that there was a signal to stop which was ignored. The maximum possible penalty for that would be a sentence of three hundred and sixty-four days at the Maine State Prison and a thousand dollar fine. Do you understand that?[1]

MR. BABBITT: Yes, sir.

THE COURT: In addition, there was testimony that after this incident that you drove the car for approximately two tenths of a mile, and then after you stopped in response to a police officer's signal, you switched with the defendant. You understand also that that in itself could be a crime?

MR. BABBITT: Yes.

THE COURT: In this matter, because you'd be in fact obstructing the police investigation of that matter, and that crime could carry with it a maximum penalty of up to three hundred sixty-four days and a fine.

MR. BABBITT: Yes, sir.

THE COURT: I know you weren't in the courtroom, but it's possible you could be implicated in at least three, and perhaps more crimes. I wanted to tell you that because I want to make sure you understand that in this matter you would have a right, I don't know whether you've been subpoenaed or just coming by agreement, but you would have a right to decline to testify if you chose to exercise that right. Do you understand that?

MR. BABBITT: Yes, sir.

THE COURT: Do you understand you have a right, under the Fifth Amendment of the United States Constitution in Article One Section Six of the Maine Constitution, to decline to testify? You have an absolute privilege in that charge if you choose to exercise it. Do you understand that?

\*　　\*　　\*　　\*　　\*　　\*

Based on what I've said, you also have a right, if you wanted to talk to an attorney, to talk to an attorney. Do you think you wish to testify in this matter?

MR. BABBITT: I'd like to talk with an attorney first.

THE COURT: That's up to you. If you want to arrange to talk to one before the evidence gets over, otherwise you can elect not to testify if you choose not to testify. The matters that you potentially could be charged with are quite serious, particularly the reckless conduct with a dangerous weapon, which as I say is a felony and which the evidence here would indicate, though there have been no such charge filed, could be filed based on the evidence and the testimony that I heard this morning.

The other two crimes, of course, are misdemeanors, but they still carry a potential of one year liability. I understand you do have some prior convictions, and therefore in fact should you be convicted on one of these crimes, you could be facing a fairly substantial jail term. So as I say, it's up to you what you want to do. If you wanted to consult with somebody, that's up to you. You go and talk to a lawyer if you want to. It's not a situation I'm going to point you on. If you elect not to testify, you don't have to testify.

After consulting with counsel, Babbitt elected not to testify.

---

1. The court's remarks with respect to Babbitt's potential liability were in part erroneous. Section 2501–A(2) of 29 M.R.S.A., for example, is a Class E crime not a Class D crime as suggested by the court's comments.

■ This Court has previously held that "[a]lthough a trial judge is under no affirmative obligation to advise witnesses of their privilege against self-incrimination as a matter of ordinary course, it is appropriate for an attentive trial judge to give the warning where need appears." *State v. Brown,* 321 A.2d 478, 483 (Me.1974). The majority of courts that have considered this issue are in accord and we do not now retreat from that holding. The scope of a trial judge's warnings in such instances, however, is subject to constitutional constraints. In *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967), the United States Supreme Court clearly established that a party's right to present his own witnesses in establishing a defense is a fundamental component of due process:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*See also Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973) ("[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense").

More recently, in *Webb v. Texas,* 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972), the Supreme Court, relying upon the holding in *Washington,* reversed a State conviction because the trial judge had used such "unnecessarily strong terms" in warning a defense witness about the consequences of perjury

that he "could well have exerted such duress on the witness' mind as to preclude him from making a free and voluntary choice whether or not to testify." *Id.* at 98, 93 S.Ct. at 353. The trial judge, in that case, had advised the witness of his right to remain silent, and warned him that if he insisted on testifying and committed perjury he (the judge) would personally ensure that he was prosecuted and punished. The witness, after hearing the judge's remarks, changed his mind and refused to testify. The Court, quoting from *Washington* without explicitly mentioning compulsory process, reversed the defendant's conviction because "[i]n the circumstances of this case" the court's remarks deprived the defendant of due process of law. *Id.* at 98, 93 S.Ct. at 353. The court concluded that the judge's remarks, in effect, "drove that witness off the stand." *Id.*

■ Although the facts in *Webb* differ from those herein in that the court's remarks were warnings against perjury not possible self-incrimination, the rationale of *Webb* applies equally to the present case. There, as here, the court's remarks deprived defendant of "the right to present a defense, the right to present defendant's version of the facts ...." *Washington,* 388 U.S. at 19, 87 S.Ct. at 1923. Mr. Fagone's defense relied solely upon the believability of his version of the facts. Babbitt's corroborating testimony was critical to that defense.[2]

■ The standard to be derived from *Webb* is that any practice that effectively deters a material witness from testifying is invalid unless necessary to accomplish a legitimate interest. *See* Westen, *The Compulsory Process Clause,* 73 Mich.L.Rev. 71, 140 (1974). Again, we recognize the important interest in protecting a witness' right against self-incrimination, and we do not

---

**2.** It is of no consequence that the witness here *might* have declined to testify anyway had he been properly warned of his right against self-incrimination. The reversal in *Webb* rested upon "the unnecessarily strong terms used by the judge [which] *could* well have exerted such

duress on the witness' mind as to preclude him from making a free and voluntary choice whether or not to testify." *Webb,* 409 U.S. at 98, 93 S.Ct. at 353 (emphasis added). *See* Westen, *The Compulsory Process Clause,* 73 Mich.L.Rev. 71, 141 (1974).

purport to hold that a trial justice cannot advise a witness of his rights when he reasonably believes that the witness may unwittingly incriminate himself. Warnings concerning the exercise of the right against self-incrimination, however, cannot be emphasized to the point where they serve to threaten and intimidate the witness into refusing to testify. *See, e.g., United States v. Blackwell,* 694 F.2d 1325, 1333–34 (D.C. Cir.1982); *Commonwealth v. Jennings,* 225 Pa.Super. 489, 492–93, 311 A.2d 720, 722 (1973).

In the present case, the presiding justice did not simply inform the witness of his right to refuse to testify and of his right to consult counsel. Before Babbitt was called as a witness, and before Babbitt was asked whether he intended to invoke his privilege against self-incrimination, and before the presiding justice had any indication whether he intended to do so, the court proceeded to emphasize the seriousness of the crimes for which he could be implicated and to set forth the maximum penalties for which he was potentially liable and to suggest emphatically and repeatedly that the witness did not have to testify.

We conclude that the court's remarks effectively "drove the witness off the stand," and thus deprived defendant of a fair trial and due process of law in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, sections 6 and 6–A of the Constitution of the State of Maine.

The entry is:

Judgment vacated.

All concurring.