## STATE of Maine

v.

## Ronald ARMSTRONG.

Supreme Judicial Court of Maine.

Argued Sept. 10, 1985.

Decided Jan. 20, 1986.

Janet T. Mills, Dist. Atty., Susan Hawkes (orally), Asst. Dist. Atty., Farmington, for plaintiff.

Ernest W. Hilton (orally), Madison, for defendant.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

VIOLETTE, Justice.

Following a jury trial in Superior Court, Franklin County, Ronald Armstrong was convicted of one count of Unlawful Trafficking in Scheduled Drugs in violation of 17–A M.R.S.A. § 1103 (1983). He assigns error to the jury instructions on accomplice liability and the State's failure to comply with its discovery burden under M.R. Crim.P. 16(a). The defendant also argues that the evidence was insufficient to sustain the verdict. We vacate the judgment, finding prejudicial error in the court's jury instructions on accomplice liability.

## FACTS

At the trial on the unlawful trafficking charges two different versions of the incident developed through the testimony of Officer Patrick Lehan and Ronald Armstrong. Officer Lehan, an undercover agent for an organized crime unit testified that on June 26, 1984, he went to 85 Perham Street in Farmington accompanied by an informant for the purpose of purchasing marijuana. While Officer Lehan's car was parked in front of that residence, a blue and white vehicle containing Ronald Armstrong and two other men arrived. According to Officer Lehan, Armstrong emerged from the vehicle and engaged in a conversation with him. Lehan testified that the following exchange transpired:

> ... I asked what type of drugs were in the area. His reply was, "What are you looking for?" and I said, "What's around?" and he said, "What would you like to buy, some acid?" I said, "What kind of acid do you have?" his reply was Blotter Acid. "My friend over in the car there has some." He directed me to go to the car. He then turned and went inside the residence.

Following Armstrong's direction, Lehan proceeded to the second car and met with the two other men. Lehan told these individuals that Armstrong had sent him over "to see about getting some acid." Subsequently, one of the individuals named John sold the officer two hits of blotter acid for $10. After the sale, Armstrong returned from the residence at Perham Street and joined Officer Lehan and John in further conversation.

Ronald Armstrong, on the other hand, testified that on June 26, 1984, he was walking home from work when two friends, John Lamoureux and Michael Meter, drove by and picked him up. Armstrong said that he entered the car and began driving around with his friends who informed him that they were looking for someone named "Paul."[1] At some point after entering the car, Armstrong learned that Lamoureux was currently selling LSD.

In time, Armstrong and his friends passed "Paul" who was in another vehicle driving on Perham Street. "Paul" flashed them down with a flashlight and both cars pulled over at a house numbered 87 Perham Street. According to Armstrong, Mike Meter then went over to the other car and had a short discussion with Officer Patrick Lehan (Paul). Shortly thereafter Meter returned to the vehicle in which Lamoureux and Armstrong were seated and asked, "Do you have the trip?" Armstrong said that he replied, "John has it." On Armstrong's version, Lamoureux and Meter then proceeded to Lehan's vehicle where a transaction took place. Armstrong testified that he neither left the vehicle nor said anything more than what is recorded above.

### I. Jury Instruction

The State's case against Armstrong was premised on accomplice liability. The indictment charged him with only one crime, one count of Unlawful Trafficking in Scheduled Drugs in violation of 17-A M.R.S.A. § 1103 (1983). When outlining for the jury the elements of accomplice liability the trial justice, *inter alia*, instructed the jury as follows:

> A person is an accomplice of another in the commission of a crime, if with the intent of promoting or facilitating the commission of the crime, he aids, or agrees to aid or attempts to aid such other person in planning or committing the crime. A person is an accomplice to any crime, the commission of which was a reasonable foreseeable consequence of his act.
>
> . . . .

This instruction is a close paraphrase of 17-A M.R.S.A. § 57(3)(A) (1983) which defines accomplice liability. Section 57(3)(A) provides in pertinent part:

---

1. Throughout his testimony, Ronald Armstrong often referred to Officer Patrick Lehan as "Paul," which was apparently the officer's undercover name.

3. A person is an accomplice of another person in the commission of a crime if:

A. With the intent of promoting or facilitating the commission of the crime, he solicits such other person to commit the crime, or aids or agrees to aid or attempts to aid such other person in planning or committing the crime. A person is an accomplice under this subsection to any crime the commission of which was a reasonably foreseeable consequence of his conduct
. . .

On appeal, Armstrong contends that the trial justice committed reversible error by including in his instruction the last sentence of § 57(3)(A): "A person is an accomplice to any crime, the commission of which was a reasonably foreseeable consequence of his act." He argues that this sentence should be employed only when the principal commits both a primary and secondary crime that may be chargeable to the accomplice. Armstrong claims that inclusion of the "reasonably foreseeable consequence" language of sentence two in a case such as this one, where only one crime is charged, allowed the jury to convict him simply because the trafficking was a *foreseeable* consequence of his actions and not because he *intended* the trafficking to transpire as required by the first portion of § 57(3)(A).

We agree with Armstrong that it was error for the trial justice to instruct on the second portion of § 57(3)(A) in this case. In *State v. Goodall*, 407 A.2d 268, 277 (Me.1979) this Court clarified the meaning of the two sentences contained in § 57(3)(A). In *Goodall* we held that § 57(3)(A) established two different bases for accomplice liability. First, under sentence one, an accomplice could be liable for any primary crime committed by the principal if it was established that the alleged accomplice intended to promote or facilitate the commission of that crime. Second, under sentence two, the accomplice could also be held liable for any secondary crime that may have been committed by the principal if 1) the accomplice intended to promote the *primary* crime and 2) the commission of the secondary crime was a foreseeable consequence of the accomplice's participation in the primary crime. *Id.* at 278. Thus, under sentence two, once a defendant, charged as an accomplice, was found to have intended to aid in the primary crime, he could be held liable for other foreseeable secondary crime committed by the principal irrespective of his intent to commit the secondary crime.

█ Under this interpretation of § 57(3)(A), a jury instruction on accomplice liability for secondary crimes is warranted only when a crime, other than the intended primary crime, has been committed by the principal. Instructing on sentence two of § 57(3)(A) in this case when there is no secondary crime charged, raised the possibility that the jury found accomplice liability based on the fact that the trafficking was a foreseeable consequence of Armstrong's conduct and not because he intended the trafficking to occur.

The defendant's conviction must stand, however, if the erroneous instruction constituted harmless error under M.R.Crim.P. 52(a).[2] Error will be considered harmless if the appellate court believes it highly probable that the error did not affect the judgment. *State v. Huff*, 469 A.2d 1251, 1254 (Me.1984). In this case, a jury verdict based on a conclusion that Armstrong intended the trafficking in scheduled drugs to occur was permissible, but one premised on a finding that the trafficking was a reasonably foreseeable consequence of his conduct was not. Under Armstrong's version of the incident, the jury could have found that Armstrong did not intend the trafficking to occur but could have decided to convict him anyway based on their conclusion that the crime was a reasonably foreseeable consequence of his conduct. In

---

**2.** M.R.Crim.P. 52(a) provides:
"*Harmless Error* Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

light of this fact, we are not persuaded that it is highly probable that the erroneous instruction did not affect the verdict.

## II. Discovery Violation

As his second issue on appeal Armstrong argues that the State violated its discovery burden under M.R.Crim.P. 16(a)[3] by failing to provide the substance of a conversation between him and Officer Lehan that, *inter alia,* was used against him at trial and raised reasonable doubt as to his guilt. The focus of Armstrong's appeal on this issue revolves around a perceived discrepancy between Officer Lehan's testimonial version of a conversation that transpired before the alleged drug sale and the version given in the police report. Armstrong urges that had he been privy to the content of Officer Lehan's trial testimony he would not have been surprised at trial and would have presented his defense differently, thereby securing an acquittal.

At the outset we note that Armstrong failed to raise a timely objection to the State's alleged failure to comply with Rule 16(a). As a result, appellate review will be based only upon a showing of obvious error. *State v. Mason,* 408 A.2d 1269, 1271 (Me.1979).

Officer Lehan presented the following version of the conversation in his police report:

As this agent approached the front of the WILBER residence, a blue and white car bearing Maine registration 63951E,

pulled into the driveway. A RONALD ARMSTRONG was sitting on the passenger's side. This agent had previously purchased drugs from ARMSTRONG and was familiar with him. After a short conversation, ARMSTRONG asked if this agent was interested in buying some acid. This agent asked what kind he had, at which time ARMSTRONG directed this agent to the blue and white car where his friend was waiting with the driver. ARMSTRONG went to the WILBER residence and entered to purchase some marijuana.

At trial, on the other hand, Lehan testified as follows:

Did you ask Mr. Armstrong any questions at that time?

Yes, I did.

I recall asking him what was around, around town, what drugs were in the area....

I asked what type of drugs were in the area. His reply was, "What are you looking for?" and I said, "What's around?" and he said, "What would you like to buy, some acid?" I said, "What kind of acid do you have?" his reply was Blotter Acid. "My friend over in the car there has some." He directed me to go to the car. He then turned and went inside the residence.

On the basis of a careful comparison, we find no merit in Armstrong's contention that the trial version of the conversation diverged substantially from that presented

---

3. The relevant portions of M.R.Crim.P. 16(a) relied on by the defendant provide:

(a) Automatic Discovery.

(1) *Duty of the Attorney for the State. The attorney for the State shall furnish to the defendant within a reasonable time:*

(A) *A statement describing any testimony or other evidence intended to be used against the defendant which:*

(i) Was obtained as a result of a search and seizure or the hearing or recording of a wire or oral communication;

(ii) *Resulted from any confession, admission, or statement made by the defendant; or*

(iii) Relates to a lineup, showup, picture, or voice identification of the defendant;

(B) *Any written or recorded statements and the substance of any oral statements made by the defendant.*

(C) *A statement describing any matter or information known to the attorney for the State which may not be known to the defendant and which tends to create a reasonable doubt of the defendant's guilt as to the offense charged.* (Emphasis added).

....

in the police report. In fact, the police report quite fairly tracks the testimony given by Officer Lehan at trial. As a result, we find that the State did not violate its discovery duty under M.R.Civ.P. 16(a).

### III. Sufficiency of the Evidence

We also reject Armstrong's remaining argument that the jury heard insufficient evidence to support its verdict that he acted as an accomplice to unlawful trafficking in scheduled drugs. On appeal, a jury verdict must stand against a claim of insufficiency of the evidence unless on the evidence before it the jury could not rationally have reached its conclusion. *See State v. Ruprecht,* 458 A.2d 418, 419 (Me.1983).

While mere presence at the scene of a crime is inadequate to prove a defendant acted as an accomplice, we have held that "... any conduct promoting or facilitating, however slightly, the commission of the crime" will be sufficient for the State to prove its case on accomplice liability. *State v. Libby,* 435 A.2d 1075, 1077 (Me. 1981). Upon careful review of the entire record, we are satisfied that the evidence was clearly sufficient to support the verdict of the jury.

The entry is:

Judgment vacated.

Case remanded for further proceedings consistent with the opinion herein.

All concurring.