1998 ME 113

**STATE of Maine**

v.

**Jason BERRY.**

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 13, 1998.
Decided May 18, 1998.

---

Stephanie Anderson, District Attorney, Steven Dassatti, Megan Elam, Asst. Dist. Attys., Portland, for State.

Peter E. Rodway, Portland, for defendant.

Before ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ and SAUFLEY, JJ.

LIPEZ, Justice.

[¶ 1] Jason Berry appeals from a judgment of conviction entered in the Superior Court (Cumberland County, *Crowley, J.*) following a jury verdict finding him guilty of theft (Class C) in violation of 17–A M.R.S.A. § 353 (1983).[1] Berry contends, *inter alia,*

---

**1.** Section 353 provides:

1. A person is guilty of theft if he obtains or exercises unauthorized control over the property of another with intent to deprive him thereof.

2. As used in this section, "exercises unauthorized control" includes but is not necessarily limited to conduct heretofore defined or known as common law larceny by trespassory taking, larceny by conversion, larceny by bailee and embezzlement.

17–A M.R.S.A. § 353 (1983). Theft is a Class C crime if the value of the property is more than $2,000, but not more than $10,000. *Id.* § 362(3)(A) (1983 & Supp.1997).

that the prosecutor denied him a fair trial by threatening to prosecute a potential defense witness whose testimony may have included incriminating admissions, and that the court's instructions on accomplice liability were erroneous. We affirm the judgment.

## I.

[¶ 2] The jury could have found the following facts from the evidence presented. On January 8, 1997, John Hunter arrived at Brenda Rice's home in Yarmouth to baby-sit her two children for the evening. After Rice left and the children went to bed, Berry and two others, Greg Carmichael and Nate Shaheen, arrived at the Rice home. At some point, Hunter suggested that they look around for something to steal. All four went into Rice's bedroom and rummaged through the bureaus and chests looking for something to take. In the closet, Carmichael found a five-pound coffee can filled with loose change, including several foreign coins, a 1924 silver dollar and some dimes which Rice's son had painted with fingernail polish. Shaheen took a diamond ring and placed it in the coffee can. Berry picked up another ring and handed it to either Shaheen or Carmichael. Three of Rice's rings ended up in the coffee can.

[¶ 3] Berry, Shaheen, and Carmichael left the house before Rice returned. When Rice came home, Berry and Carmichael picked up Hunter and went to Berry's house. In Berry's bedroom, Hunter saw some change and two rings in a purple long-neck vase. One of the rings in the vase was a diamond ring. Hunter also saw a painted coin and the coffee can from Rice's closet on the floor. Carmichael was wearing one of the rings taken from Rice's bedroom. Berry emptied the contents of the vase onto his bed and said that he was going to purchase drugs with the money.

[¶ 4] On the following day, Rice notified the police that the coffee can and the rings were missing. As a result of discussions with Hunter, the police obtained and executed a search warrant for Berry's house. They found a 1924 silver dollar, a coffee can, and change in a tall purple glass vase.

[¶ 5] At the close of the State's case-in-chief, the court denied Berry's motion for a judgment of acquittal. The court instructed the jury on accomplice liability as follows:

A person is legally accountable for the conduct of another person when he is an accomplice of such other person in the commission of a crime. A person is an accomplice of another person in the commission of a crime if with the intent of promoting or facilitating the commission of a crime he solicits such other person to commit the crime or aids or agrees to aid or attempts to aid such other person in the planning or committing the crime. A person is an accomplice to any crime the commission of which was a reasonably foreseeable consequence of his conduct.

The jury returned a guilty verdict, and this appeal followed.

## II.

[¶ 6] Berry first argues that the State's "threat" to prosecute Carmichael violated Berry's constitutional right to present witnesses in his defense. During a pretrial, in-chambers conference, Berry's attorney announced his intention to call Carmichael as a witness. The charge against Carmichael stemming from the theft at Rice's home had been dismissed pursuant to a plea bargain in another case. When the court stated its assumption that the dismissal was without prejudice, Berry's attorney said that he would not call Carmichael as a witness "unless the State want[ed] to go on the record and say that they [sic] are not going to ... prosecute Carmichael for his testimony here today." The prosecutor declined that invitation.[2] Later, during a break in the trial, Carmichael spoke to his attorney, who then represented to the court that Carmichael would invoke his Fifth Amendment privilege if called to testify.

[¶ 7] A defendant's right to present his own witnesses in establishing a defense is

---

**2.** The prosecutor's exact words were: "Right. If he admits today, I'm not going to prosecute him? I will certainly check. I'll have them get the copy of the dismissal and see if it is with or without prejudice, if it is even noted."

a fundamental component of due process. *See State v. Fagone,* 462 A.2d 493, 496 (Me. 1983) (citing *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967)). In *Fagone,* the trial court warned a prospective defense witness about the extent of his potential criminal liability by "emphatically and repeatedly [suggesting] that the witness did not have to testify." *Id.* at 497. We held that the trial court deprived the defendant of a fair trial by effectively driving the witness off the stand. *See id.*

[¶ 8] In this case, Carmichael was not present during the chambers conference, nor did he have any contact with the prosecutor. The prosecutor's mere suggestion that Carmichael might be prosecuted if he made incriminating statements falls far short of the intimidating conduct by a prosecutor that has been held to violate a defendant's right to present witnesses in his defense. *See, e.g., United States v. Morrison,* 535 F.2d 223, 227 (3rd Cir.1976) (holding that prosecutor's repeated warnings to potential defense witness, including a "highly intimidating personal interview," violated the defendant's right to present witnesses in his defense). Carmichael was not effectively driven off the witness stand by the prosecutor; rather, he chose to invoke his constitutional right not to give incriminating testimony after consulting with a lawyer. We conclude that the prosecutor's statement did not deprive Berry of a fair trial in violation of the Maine and United States Constitutions.

### III.

[¶ 9] Berry also argues that there was no evidence regarding his role in the theft and, therefore, the accomplice liability instruction was not generated by the evidence. We disagree. The jury heard evidence that Berry was present when Hunter suggested looking for something to steal, that all four men "snooped around" in Rice's bedroom, and that Berry took one of Rice's rings and handed it to either Carmichael or Shaheen. Because the evidence established that Berry, at a minimum, aided in the commission of a theft, the court properly instructed the jury on accomplice liability. *See State v. Wright,* 662 A.2d 198, 202 (Me.1995).

[¶ 10] Berry argues further that the court erred by instructing the jury on the "reasonably foreseeable consequence" basis for accomplice liability. Although Berry objected generally to the accomplice liability instruction, he did not object to and did not direct the court's attention to what he now contends is the specific defect in the instruction. *See* M.R.Crim.P. 30(b). We therefore review for obvious error affecting substantial rights. *See State v. Daniels,* 663 A.2d 33, 36 (Me. 1995).

[¶ 11] In pertinent part, the accomplice liability statute provides that:

3. A person is an accomplice of another person in the commission of a crime if:

A. With the intent of promoting or facilitating the commission of the crime, he solicits such other person to commit the crime, or aids or agrees to aid or attempts to aid such other person in planning or committing the crime. A person is an accomplice under this subsection to any crime the commission of which was a reasonably foreseeable consequence of his conduct[.]

17-A M.R.S.A. § 57(3)(A) (1983). This statute establishes two bases for accomplice liability: first, when the alleged accomplice intends to promote the commission of the primary crime; second, when the alleged accomplice intends to promote the primary crime and the commission of the secondary crime is a foreseeable consequence of the accomplice's participation in the commission of the primary crime. *See State v. Goodall,* 407 A.2d 268, 277–78 (Me.1979). In *State v. Armstrong,* 503 A.2d 701 (Me.1986), we explained that an instruction on the reasonably foreseeable consequence basis of accomplice liability "is warranted only when a crime, other than the intended primary crime, has been committed by the principal." *Id.* at 703. When no secondary crime is charged, an instruction on the reasonably foreseeable consequence basis "raise[s] the possibility that the jury found accomplice liability based on the fact that the [crime] was a foreseeable consequence of [the accomplice's] conduct and not because he intended the [crime] to occur."

*Id.*[3] Because Berry was not charged with a secondary crime, the court erred by instructing the jury on the reasonably foreseeable consequence theory of accomplice liability. *Cf. State v. Bowman,* 588 A.2d 728, 732 (Me.1991) (holding that trial court erred by instructing jury on accomplice liability without specifying a primary crime or its elements).

■ [¶ 12] Although the court erred by instructing the jury on the second sentence of § 57(A)(3), the error does not rise to the level of an obvious error affecting Berry's substantial rights. *See* M.R.Crim.P. 52(b). Applying the instructions as given, the jury could have reached its verdict based on one of two permissible conclusions: that Berry himself committed the acts constituting a theft or that, with the requisite mental state, he solicited, aided, or agreed to aid the other men in the commission of the theft. There was substantial evidence of Berry's guilt as a principal. There was also substantial evidence that the theft by the others was an intended consequence of Berry's conduct. Therefore, the court's instruction on the second sentence of § 57(A)(3), viewed in the context of the entire charge, was not a highly prejudicial error tending to produce manifest injustice. *See Daniels,* 663 A.2d at 36.[4]

### IV.

■ [¶ 13] At trial, Hunter testified, over Berry's objection, that Berry said that he was going to purchase drugs with the stolen money. Berry contends that this testimony should have been excluded pursuant to M.R. Evid. 403.[5] We disagree. We review a court's Rule 403 ruling to determine whether the court exceeded its discretion. *See State v. Thompson,* 1997 ME 109, ¶ 14, 695 A.2d 1174, 1179. The trial court determined that the proffered testimony was "highly probative" of Berry's exercise of unauthorized control over Rice's property. The court correctly weighed the probative value of the evidence against the possibility of unfair prejudice to Berry, and instructed the jury that the evidence could only be considered on the issue of Berry's participation in the theft. *See State v. Connors,* 679 A.2d 1072, 1074–75 (Me.1996). The trial court did not exceed its discretion by admitting Hunter's testimony.

■ [¶ 14] Finally, we reject Berry's contention that the court erred by denying his motion for a judgment of acquittal. Viewed in the light most favorable to the State, the evidence in this case was sufficient to eliminate any reasonable doubt that Berry exercised unauthorized control over Rice's property with intent to deprive her thereof. *See State v. Thompson,* 503 A.2d 228, 232 (Me. 1986).

The entry is:

Judgment affirmed.

---

3. In *State v. Kimball,* 424 A.2d 684 (Me.1981), we held that the trial court did not err by instructing the jury on the second sentence of 17–A M.R.S.A. § 57(3)(A), when the defendants were charged with murder in connection with a death that occurred during the course of a robbery. *See id.* at 691–93. We noted that the trial court used the word "murder" and described the elements of that crime "to direct the jury's attention to what they must find had in fact occurred and what they must find to have been a reasonably foreseeabl[e] consequence of either defendant's participation in the robbery...." *Id.* at 693. In *Kimball,* the robbery was the primary crime and the murder was the secondary crime. To obtain a conviction for a secondary crime on the basis of the second sentence of 17–A M.R.S.A. § 57(3)(A), the State is required to prove that the defendant possessed the intentional mental state to be an accomplice to the primary crime and that the commission of the secondary crime by another person was a reasonably foreseeable consequence of the defendant's participation in the primary crime. *See State v. Linscott,* 520 A.2d 1067, 1070 (Me.1987); Alexander, *Maine Jury Instruction Manual* §§ 6–31 cmt., 6–32, 6–33 (3d ed.1996).

4. Contrary to Berry's contention, the court did not commit obvious error by failing to instruct the jury that a defendant's "mere presence" at the scene of a crime does not make that defendant an accomplice. *See Daniels,* 663 A.2d at 36.

5. Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice...." M.R. Evid. 403.