MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 106
Docket:      Ken-19-364
Argued:      July 15, 2020
Decided:     August 13, 2020

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS JJ.

## STATE OF MAINE

v.

## JAHNEIRO PLUMMER

CONNORS, J.

[¶1]  Jahneiro Plummer appeals from a judgment of conviction entered by the trial court (Kennebec County, *Stanfill, J.*) after a jury found him guilty of two counts of aggravated trafficking of scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(D), (H) (2020), and found for the State on one count of criminal forfeiture, 15 M.R.S. § 5826 (2020).  Plummer argues that the trial court committed obvious error in its instructions to the jury on accomplice liability and by instructing the jury on a written report not admitted in evidence.  He also asserts that the court abused its discretion by denying his motion for a new trial because statements made during the State's closing argument impermissibly commented upon his out-of-state residence.  We affirm the judgment.

## I. BACKGROUND

[¶2]  Viewing the evidence in the light most favorable to the State, the jury could have rationally found the following facts beyond a reasonable doubt.  *See State v. Chan*, 2020 ME 91, ¶ 2, --- A.3d ---.

[¶3]  On two separate occasions in July 2018, an undercover Maine Drug Enforcement Agency (MDEA) agent purchased cocaine base from a man known as "G-Town" in a back bedroom of an apartment in Gardiner.  On July 31, 2018, MDEA agents executed a search warrant at that apartment.  After announcing themselves, agents observed two men fleeing from the back door.  Outside, agents arrested the two men and identified them as Michael Nelson (G-Town) and Plummer.

[¶4]  After arresting the two men, the agents searched the back bedroom of the apartment.  Agents found a paper plate on the floor containing "a large amount" of loose tan powder, as well as a scale, scissors, and sandwich bags.  The agents also found several bags in the bedroom.  One of the bags was tipped over, and it contained Plummer's identification card, his wallet, two digital scales, a cellphone, and rubber bands.  Near the bag, agents found a sock "the size of a baseball" containing heroin and cocaine base.  In another bag, the agents found $14,035 in United States currency wrapped in

rubber bands. In total, the agents seized 150 grams of heroin and 230 grams of cocaine base.[1]

[¶5] In November 2018, Plummer was indicted on two counts of aggravated trafficking in scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(D), (H), and one count of criminal forfeiture, 15 M.R.S. § 5826. Plummer pleaded not guilty.

[¶6] In February 2019, after Plummer's trial was severed from Nelson's, the court held a two-day jury trial. During the trial, Plummer testified, introducing the fact that he was from Brooklyn, New York, and stating that he had traveled to Maine to smoke marijuana and record music with Nelson using his phone. He testified that he did not know Nelson was selling drugs and had fled "on instinct."

[¶7] On rebuttal, the State sought to introduce evidence from an agent as to the location of certain hubs from which drugs come into Maine. Plummer objected on the ground that it would be unfairly prejudicial to

---

[1] Although the evidence viewed in the light most favorable to the State supports this fact scenario, the record is not a model of clarity as to which items were found in or near which bag. As the trial judge stated, "It is very true that the officers were all over the place in terms of where—which bag and where it was located." When one of the agents broke into the back bedroom, he "felt a tingling on [his] face" from the drugs on the paper plate being released into the air, requiring the MDEA to secure the premises before taking any further action inside the room. Perhaps as a result of this situation, by the time the technician entered to record the evidence, the bags were on the bed, and the agents' testimonies as to what they contained and where they were originally located bore inconsistencies.

submit evidence to the effect that the trip from New York was a typical drug route, and this objection was sustained. *See* M.R. Evid. 403. The State was, however, allowed to ask the agent whether drugs such as cocaine base and heroin are generated in Maine or come from elsewhere, over no objection. The agent testified that based on his experience, "it's typical that drugs are imported from other places" and are not made in Maine.

[¶8] During closing arguments, the State focused on Plummer's testimony regarding his travel to Maine shortly before the raid:

> And as we know from [the agent's testimony], in his 22 years of drug enforcement experience these drugs don't come from Maine, they're imported from outside the state.

> Now, Mr. Plummer has told you that he came by bus from New York to Maine the night of July 30th, that he did so to record music and smoke marijuana with his friend, Mr. Nelson, that he had no idea Mr. Nelson was dealing drugs and he was sleeping when the agents executed the search warrant.

> Ladies and gentlemen, is it reasonable that Mr. Plummer had no idea what was going on in that room or why Mr. Nelson was in Maine. Is it reasonable that he took, as he testified, a 10 hour bus ride to Maine to record music with a friend, a friend who he records music with 15 minutes from his house in Brooklyn? Is Gardiner a hotbed of music recording that we're unaware of?

[¶9] During its rebuttal closing, the State further argued,

> Now it's true not everybody who comes to Maine by any means, boat, bus, plane, is carrying drugs. And people leaving the

state aren't necessarily carrying drugs and money. But not everybody shows up at the apartment, at that room, and flees the minute law enforcement shows up.

Plummer did not object to the State's closing argument.

[¶10] After the close of evidence, the court gave—both orally and in writing—the following jury instructions regarding accomplice liability:

A person may be guilty of a crime if he personally does the acts that constitute the crime or if he is an accomplice of another person who actually commits the crime. A person may be found guilty of a crime as an accomplice if the [S]tate proves beyond a reasonable doubt that with the intent of promoting or facilitating the commission of a crime the person solicits or aids or agrees to aid or attempts to aid another person who commits a crime in the planning or commission of that crime. Mere presence at the scene of a crime without more does not prove that a person is an accomplice to a crime. However, once a person's presence at a crime scene is proven, he may be guilty of the crime as an accomplice if he intentionally engages in any conduct, however slight, that promotes or facilitates the commission of the crime. Thus, a person may be guilty of aggravated trafficking in drugs as a principal if the [S]tate proves beyond a reasonable doubt that the defendant personally did the acts that constitute the crime.

Alternatively, the defendant may be guilty of aggravated trafficking in drugs or unlawful trafficking in drugs if the [S]tate proves beyond a reasonable doubt that with the intent of promoting or facilitating the crime of aggravated trafficking or unlawful trafficking in drugs the defendant solicited or aided or agreed to aid or attempted to aid another person that committed a crime in the planning or commission of that crime.

Plummer did not object to the jury instructions.

6

[¶11]   During deliberations, the jury requested a transcript of one MDEA agent's trial testimony, as well as the agent's written report, which was used during his cross-examination to refresh his recollection.   The court provided the jury with the trial testimony but denied the jury's request for the written report because the report had not been entered in evidence.[2]   The court then gave the following instruction regarding the written report:

> You must decide the case based on the evidence presented to you and admitted in evidence.  That evidence does not include any of the written reports.  You must not speculate about what others might have said or what those materials may show.  You can draw no inference, favorable or unfavorable, from the fact that there is no evidence of the reports in the materials submitted to you. You're free to consider the testimony about the reports or what the reference is but the reports themselves are not in[] evidence.

Plummer did not object.

[¶12]   The jury found Plummer guilty on all counts.  Plummer filed a motion for a new trial, arguing that he was unfairly prejudiced by the State's closing argument, as well as by the agent's testimony about drugs coming into Maine from out of state.  The court orally denied Plummer's motion.

---

[2]   The prosecutor and defense counsel agreed that because the report was not in evidence it should not be given to the jury.

[¶13]  In August 2019, the court sentenced Plummer to fifteen years' imprisonment, with all but six years suspended, and four years' probation. Plummer timely appealed.  *See* 15 M.R.S. § 2115 (2020); M.R. App. P. 2B(b)(1).

## II.  DISCUSSION

A.    Jury Instructions on Accomplice Liability

[¶14]  Plummer asserts three arguments challenging the instructions given to the jury on accomplice liability.  First, he contends that the trial court's instruction implied that accomplice liability could be found upon the commission of any crime, not just aggravated trafficking or unlawful trafficking.  Second, Plummer argues the court erroneously instructed jurors that he could be convicted of aggravated trafficking as an accomplice if he acted with the intent to promote or facilitate merely unlawful trafficking. Finally, he argues that the court erred by failing to instruct the jury on the "reasonably foreseeable consequence" basis for accomplice liability. 17-A M.R.S. § 57(3)(A) (2020).  Because Plummer did not object to the jury instructions given at trial, we review the instructions for obvious error.  *See State v. Coleman,* 2019 ME 170, ¶ 22, 221 A.3d 932.

[¶15]  Obvious error exists when there is "(1) an error, (2) that is plain, and (3) that affects substantial rights."  *State v. Pabon*, 2011 ME 100, ¶ 29,

28 A.3d 1147. "If these conditions are met, we will exercise our discretion to notice an unpreserved error only if we also conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings." *Id*. Importantly, "we review jury instructions in their entirety to determine whether they presented the relevant issues to the jury fairly, accurately, and adequately, and we will vacate the court's judgment only if the erroneous instruction resulted in prejudice." *State v. Hansley*, 2019 ME 35, ¶ 8, 203 A.3d 827 (quotation marks omitted).

[¶16] Here, viewing the instructions as a whole, there was no error, let alone obvious error.

1. Accomplice Liability upon the Commission of Any Crime

[¶17] Plummer asserts that the court's jury instruction implied that accomplice liability could be found upon the commission of any crime because one sentence in the instructions provided a defendant

> may be guilty of aggravated trafficking in drugs or unlawful trafficking in drugs if the [S]tate proves beyond a reasonable doubt that with the intent of promoting or facilitating the crime of aggravated trafficking or unlawful trafficking in drugs the defendant solicited or aided or agreed to aid or attempted to aid another person that committed *a crime* in the planning or commission of *that crime*.

(Emphases added.)

[¶18]  Even in isolation, this sentence is logically understood to require facilitation of "that crime," *i.e.*, the primary crime.  When viewed in the context of the entire instructions, the clarity of this necessary linkage is underscored. When the court initially identified the elements of accomplice liability in its general instruction, the court stated, "A person may be guilty of *a crime* if he personally does the acts that constitute *the crime* or if he is an accomplice of another person who actually committed *the crime*."  (Emphases added.)  The court, following the general instructions, informed the jury that the crimes at issue were aggravating trafficking or unlawful trafficking.

[¶19]  Thus, when viewed in their entirety, the instructions created no ambiguity as to which crimes Plummer might be found to be an accomplice, and accurately described the elements necessary for accomplice liability.

2.     Accomplice to Unlawful Trafficking

[¶20]  Plummer also argues that the instructions suggested he could be convicted of aggravated trafficking as an accomplice if he acted with the intent to promote or facilitate merely unlawful trafficking, extracting the following portion of the instructions:

> [T]he defendant may be guilty of aggravated trafficking in drugs or unlawful trafficking in drugs if the [S]tate proves beyond a reasonable doubt that *with the intent of promoting or facilitating the crime of aggravated trafficking or unlawful trafficking in drugs*

> the defendant solicited or aided or agreed to aid or attempted to aid another person that committed a crime in the planning or commission of that crime.

(Emphasis added.)

[¶21]   Although the court shortened the jury instructions by not providing two separate instructions on accomplice liability for each crime, aggravated trafficking and unlawful trafficking, again viewing the instructions as a whole, the court did not err.

[¶22]   The use of the term "or" between "aggravated trafficking" and "unlawful trafficking" in the jury instructions established that the jury could convict Plummer of (1) aggravated trafficking as an accomplice if he acted with the intent to promote or facilitate aggravated trafficking or (2) unlawful trafficking as an accomplice if he acted with the intent to promote or facilitate unlawful trafficking.   The way the court structured this section of the jury instructions was not likely to mislead the jury and was not so unclear as to create a risk that the jury would find Plummer guilty as an accomplice of a greater crime than the principal actor.

[¶23]   Furthermore, this distinction was explained to the jury earlier in the general instructions when the court stated, "[A defendant] may be guilty of *the crime* as an accomplice if he intentionally engages in any conduct, however

slight, that promotes or facilitates the commission of *the crime*." (Emphases added.) The court's instructions indicated that the jury could convict Plummer of aggravated trafficking as an accomplice if he acted with the intent to promote or facilitate the same crime, in this case aggravated trafficking. Viewing the instructions as a whole, the instructions did not create the ambiguity that Plummer could be convicted of aggravated trafficking as accomplice if he acted with the intent to promote or facilitate merely unlawful trafficking.

3.  "Reasonably Foreseeable Consequence" Instruction

[¶24] Plummer asserts that the court committed obvious error by failing to instruct the jury on the "reasonably foreseeable consequence" basis for accomplice liability pursuant to 17-A M.R.S. § 57(3)(A).

[¶25] Title 17-A M.R.S. § 57(3)(A) provides:

> **3.** A person is an accomplice of another person in the commission of a crime if:
>
> > **A.** With the intent of promoting or facilitating the commission of the crime, the person solicits such other person to commit the crime, or aids or agrees to aid or attempts to aid such other person in planning or committing the crime. A person is an accomplice under this subsection to any crime the commission of which was a reasonably foreseeable consequence of the person's conduct.

[¶26]  "This statute establishes two bases for accomplice liability: first, when the alleged accomplice intends to promote the commission of the primary crime; second, when the alleged accomplice intends to promote the primary crime and the commission of the secondary crime is a foreseeable consequence of the accomplice's participation in the commission of the primary crime." *State v. Berry*, 1998 ME 113, ¶ 11, 711 A.2d 142.

[¶27]  We have concluded that an instruction on the reasonably foreseeable consequence basis of accomplice liability "is warranted only when a crime, other than the intended primary crime, has been committed by the principal." *Id*. (quotation marks omitted).  This is because "[w]hen no secondary crime is charged, an instruction on the reasonably foreseeable consequence basis raises the possibility that the jury found accomplice liability based on the fact that the crime was a foreseeable consequence of the accomplice's conduct and not because he intended the crime to occur." *Id*. (alterations omitted) (quotation marks omitted).  In other words, in the absence of a separate crime, the instruction can mislead the jury into concluding the necessary intent for the crime charged is not required.

[¶28]  Plummer was charged with two counts of aggravated trafficking. *See* 17-A M.R.S. § 1105-A(D), (H).  The court also gave the jury instructions on

the lesser-included offense[3] of unlawful trafficking. The court did not err by failing to instruct the jury on the "reasonably foreseeable consequence" basis of accomplice liability because unlawful trafficking and aggravated trafficking are not distinct crimes with different elements—the conviction for either is based solely on the amount of drugs that are found to be trafficked, not the intent of the actor. *See* 17-A M.R.S. §§ 1103(1-A)(A), 1105-A(1)(D), (H) (2020).

[¶29] Inclusion of the "reasonably foreseeable consequence" instruction, moreover, as noted above, expands, not narrows, the universe of accomplice liability: in addition to finding liability for intending a primary crime, a defendant can also be found guilty as an accomplice for intending to promote a primary crime without the intent to commit the secondary crime if the secondary crime is a foreseeable consequence of the defendant's participation in the primary crime. This is why defendants have argued error when the instruction has been given in the absence of a secondary crime. *See, e.g.*, *Berry*, 1998 ME 113, ¶¶ 10-11, 711 A.2d 142; *State v. Armstrong*, 503 A.2d 701, 703 (Me. 1986). The argument that the "reasonably foreseeable

---

[3] "A lesser-included offense is one that has no elements different from or in addition to the elements of the charged offense, making it impossible to commit the greater offense without having committed the lesser." *State v. Gantnier*, 2012 ME 123, ¶ 10, 55 A.3d 404 (alteration omitted) (quotation marks omitted).

consequence" language in the statute limits, as opposed to expands, accomplice liability was expressly rejected in *State v. Goodall*, 407 A.2d 268, 277-78 (Me. 1979).

[¶30] The court committed no error in not instructing on the second statutory basis for accomplice liability.

B.    Jury Instruction on MDEA Agent's Report

[¶31]   Plummer argues that the court's instruction to the jury—following the jury's request for an MDEA agent's report—that they should not speculate about the content of any written reports and draw no inference, favorable or unfavorable, from the lack of submission of any report, was erroneous because juries are free to conclude that the reasonable doubt standard has not been met due to a lack of evidence.   Because no contemporaneous objection was made to the instruction, we again apply the obvious error standard. *See Coleman,* 2019 ME 170, ¶ 22, 221 A.3d 932.

[¶32] It was entirely appropriate for the court to instruct the jury not to speculate, favorably or unfavorably, as to the contents of materials that neither side wanted admitted and would likely have been inadmissible had admission been sought. The court's instruction was based on the representative instruction in the *Maine Jury Instruction Manual* for material

not before the jury. *See* Alexander, *Maine Jury Instruction Manual* § 8-4 at 8-8 (2019-20 ed.). Because the jury requested to view an MDEA agent's report not admitted in evidence, it was necessary for the court to deny the jury's request for the report and explain the relationship between the agent's testimony and his written report. *See id*. at 8-8 cmt. ("When such requests are made, the request for the unadmitted physical or written materials must be denied unless all parties agree to allow the materials to go to the jury. To do otherwise would have the effect of reopening the record for introduction of new evidence.").

[¶33] The jury was fully and properly instructed as to the State's burden of proof and the reasonable doubt standard, imposing the duty upon the State at all times to produce sufficient evidence to meet its burden. The standard instruction regarding material not before the jury did not undermine those previously given instructions nor suggest any lessening of the State's burden. There was no error.

C. Motion for a New Trial

[¶34] Finally, Plummer asserts that the court abused its discretion by denying his motion for a new trial, claiming that statements made during the State's closing argument impermissibly commented upon Plummer's

out-of-state residence as evidence of his guilt. Because Plummer did not contemporaneously object to the State's closing argument, but instead challenged the State's comments for the first time in a motion for a new trial, we review "the court's decision on the motion for a new trial for an abuse of discretion, [but] review the effect of the challenged comments for obvious error affecting [the defendant's] substantial rights." *State v. Daluz*, 2016 ME 102, ¶ 50, 143 A.3d 800.

[¶35] The court did not abuse its discretion. The State, in its closing, reiterated aspects of Plummer's testimony, namely that he was visiting Maine from his home state of New York. The State never mentioned Plummer's residence in its case-in-chief. From the record before us, the thrust of the State's argument was to question Plummer's account of why he was visiting Maine, not to invoke jurors' prejudices about individuals from out of state or to insinuate that because Plummer was not from Maine, he was more likely to commit the crime of drug trafficking.

[¶36] The evidence upon which the State focused included (1) the short period of time between Plummer's arrival and the raid; (2) the agents appearing to interrupt the two men in the back bedroom as drugs were being divided into baggies; (3) the men fleeing the room; (4) the fact that the drugs

found in the room were in a larger quantity than observed by the agent who had recently engaged in two purchases from Nelson in the room; and (5) the implausibility of Plummer's testimony that he traveled to Gardiner for the purpose of smoking marijuana and making music on his phone.

[¶37] That the State noted in its closing that an agent testified that drugs come from out of state, while also acknowledging that not everyone comes to Maine for the purpose of carrying drugs, suggests no incitement to base the jurors' verdict on anything but the evidence presented to them.

The entry is:

Judgment affirmed.

---

Rory A. McNamara, Esq. (orally), Drake Law, LLC, Berwick, for appellant Jahneiro Plummer

Aaron M. Frey, Attorney General, and Katie Sibley, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Kennebec County Unified Criminal Docket docket number CR-2018-1580
FOR CLERK REFERENCE ONLY